By the Court. Oakley, Ch. J.
The defence relied upon, is two fold:
First. It is insisted that the services of the plaintiff, for which the action is brought, were rendered by him in his character as ■counsel of the corporation, appointed by the common council of the city of New York.
The written opinions and reports prepared by the plaintiff and exhibited on the trial, appear to have been signed by him with the official addition of “ counsel to the corporationand it is claimed by the defendants, that the supervisors of, the city and county of New York, are in fact and in substance, the same as the corporation of the city of New York ; as they govern the same territory and the same people, and represent identically the same interests ; and that the salary of the plaintiff, as counsel of the corporation of the city, ought to be held to cover his services in this respect.
We have not much considered this point, and in the view we have taken of the case, it is not necessary for us to decide it.
Assuming that the plaintiff stands towards the board of supervisors, in the same attitude that any other professional gentleman would, who had performed the same services, and that he is entitled to recover, if any person could recover; the next ground of defence is, that for services of this character, no action at all can be sustained against the supervisors of the county, or rather against the county.
The plaintiff, from the points submitted, appears to have en *469 tertained the idea, that the supervisors, or the hoard of supervisors, are a body independent of the county which they represent ; and as such may incur liabilities, and be subject to suits, as a board or corporate body.
This we deem erroneous. The supervisors as such, or as a board, are no body corporate, and possess no powers as a corporation. The corporation is the county.
The revised statutes, (1 R. S. 364,) under the head “ Of the Powers, Duties and Privileges of Counties, and of certain County Officers,” proceed to erect a system, regulating this whole subject.
The first section of title first, declares that each county, as a body corporate, has capacity:
1. “ To sue and be sued in the manner prescribed by law.
2. To purchase and hold lands within its own limits, and for the use of its inhabitants, subject to the power of the legislature over such limits.
3. To make such contracts, and to purchase and hold such personal property, as may be necessary to the exercise of its corporate or administrative powers; and
4. To make such orders for the disposition, regulation, or use of its corporate property, as may be deemed conducive to the interests of its inhabitants.”
The second section enacts that no county shall possess or exercise any corporate powers except such as are enumerated in that statute, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given.
The third section is as follows: “ All acts and proceedings by or against a county in its corporate capacity, shall be in the name of the board of supervisors of such county; but every conveyance of lands within the limits of such county, made in any manner, for the use or benefit of its inhabitants, shall have the same effect as if made to the board of supervisors.”
And section four provides, that the powers of a county as a body politic, can only be exercised by the board of supervisors thereof, or in pursuance of a resolution by them adopted.
Looking at these provisions of the revised statutes, it will be perceived that every county is a corporation with defined and *470 restricted powers, to be exercised in a particular manner, viz.: by the board of supervisors itself, or by some person in pursuance of a resolution by them adopted. There is no grant of corporate power, to be used by or in behalf of a county, in any other mode.
In the city and county of New York, the aldermen of the city, together with the mayor and recorder, constitute the board of supervisors, which exercises the powers conferred by this chapter of the revised statutes.
Proceeding with its provisions, the fourth section of title second gives to the board of supervisors of every county, at their annual meetings, or at any other meeting, power, “ To examine, settle, and allow all accounts chargeable against such county; and to direct the raising of such sums as may be necessary to defray the same(Subd. 2.) “ To audit the ac-
counts of town officers,” &c.; (Subd, 3.) By the eighth section, the chairman of the board, is clothed with power to administer an oath to any person, concerning any matter submitted to the board, or connected with their powers or duties.
Each board is entitled to have a clerk who is to record all the proceedings of the board; and it is made one of his duties, to make regular entries of all the resolutions and decisions of the board, on all questions concerning the raising or payment of moneys. He is also to preserve and file all accounts acted upon by the board. (I 9.) The books and records of the boards of supervisors are open to public examination, without charge. (§ 11.) The third title of the same chapter of the revised statutes, (1 R. S. 384,) is entitled, “ Of legal proceedings in favor of and against counties.” The first section provides, that if any controversy or cause of action shall exist between the counties, or between a county and an individual, such proceedings shall be had, at law or in equity, for trying and finally settling the same, in like manner, and with like effect, as in similar suits or proceedings between individuals and corporations. By the second section the county, in all such suits and proceedings, shall sue or be sued in the name of the board of supervisors thereof, except where county officers are, by law, to sue in their name of office, for the benefit of the county. . When a suit is commenced against a county, the chairman or clerk of the board, must lay *471 before the board of supervisors, a full statement of the suit, for their direction in regard to its defence. (§ 3.) The sixth section provides for the recovery of costs, and that judgments recovered against counties, or against county officers in their name of office, shall be a county charge, and when levied and collected, shall be paid to the person to whom the same shall have been adjudged.
These provisions as to suits, are further carried out in the subsequent chapter of the revised statutes, entitled, “ Of proceedings in special cases,” in the title, “ Of proceedings by and against corporations, and public bodies, having certain corporate powers, and by and against officers representing them.” (2 R. S. 444,- 457, 473.) Section ninety-two of title four permits actions to be brought “ by the supervisors of a county;” but actions against counties, when allowed by law, are to be brought against the board of supervisors thereof, (s 95.) Such actions as are allowed against the officers enumerated in section 92, must be brought against them individually, specifying their name of office; (§ 96;) and it is therefore inapplicable to suits against a board of supervisors, or the supervisors of a county, as such. It is further enacted, in the same article and title, that no execution shall issue on judgments recovered against the board of supervisors, and it prescribes the manner of obtaining payment of such judgments, by laying the same before the board of supervisors, to be by them added to the tax to be laid on the county. (§ 102, 103, 107.)
It will be observed that by these various provisions of law the board of supervisors is clothed with ample power, to examine, settle, and allow all accounts, chargeable to the county; or in other words, which may be county charges. And the county may be sued for certain claims, or in respect of certain causes of action or controversies, as expressed in the third title before cited. (1 R. S. 384.)
It is claimed by the plaintiff, that the first section of this title, enables individuals to bring suits against a county, for any claim, cause of action or controversy whatever; although the same, may be an account, which might be allowed as a county charge.
We consider that a different construction must be given to *472 the third title; and that it was intended to provide a remedy against the county, for such causes of action, (and no other,) as could not be presented to and examined and allowed by the board of supervisors as county charges. Of this class, would be claims for the malfeasances of county officers ; and claims arising from torts, for which the county may be liable.
“ Such controversy,” in the first section of that title, means as we think, such a claim or cause of action as cannot be settled and adjusted, on the application of the party, in the exercise of the ordinary powers of the board of supervisors, and which is not a county charge until it passes into judgment.
The inquiry is, whether in cases (like the plaintiff’s,) an action can be brought at all, against the board of supervisors. Here no account has been presented to the board, for audit and allowance. The suit rests on the distinct claim, that every one who has a demand against a county, on an implied contract, may sue the county for its recovery; and that any one who has submitted such a demand .to the board of supervisors, for their examination and allowance, may abandon his pursuit there, and commence a suit against the board as “representing the" county.
The maintenance of this claim will necessarily lead to interminable suits against the counties, for every description of accounts and demands. We think it was clearly the intention of the legislature, to protect counties from such suits. The board of supervisors, as organized by law, consists of a body of men, ■elected by the people to represent their respective towns and wards. They have no interest against claimants, nor any feeling on the subject, other than that of every judge and every citizen. The statute virtually makes this body, a board of arbitration ; to which all parties, having claims against their respective counties, other than those of the indefinite character before referred to, must submit such claims for examination, audit and allowance ; and it allows no appeal from their decision. They are a judicial body, constituted by law to decide on all matters of account between individuals and the public body composing the county which they represent.
If, in this case, the plaintiff had contracted specially with the *473 board of supervisors, to receive such compensation for his services as they might allow, the arrangement would have been binding upon him. As the law prescribing the mode of ascertaining claims of the like character exists, we consider the services of the plaintiff as having been rendered under the law ,* and that the law, in effect, is incorporated into the contract. The plaintiff must be presumed to know the law, and to have contracted in reference to it.
It is not to be doubted that the plaintiff’s claims are county charges, and might have been submitted to the board of supervisors for allowance. He claims by force of an implied contract of the board, for services which were beneficial to the board, and thus to the county.
The supreme court had the statutes on this subject under consideration in Bright v. Supervisors of Chenango, (18 Johns. 242; Mallory v. Supervisors of Cortland, and Doubleday v. Supervisors of Broome, (2 Cow. 583;) and The People v. Supervisors of Albany, (12 Wen. 257.)
Those cases establish this general principle, that wherever services have been rendered, which are beneficial to a county, and no specific compensation is provided for the same by law, they shall be deemed contingent charges against the county.
The services of the plaintiff are precisely of that character.
It will be seen by reference to the statute regulating the powers of county officers, (1R. S. 385, § 3,) that after specifying various liabilities and demands, which shall be deemed county charges, the fifteenth subdivision includes “ The contingent expenses necessarily incurred for the use and benefit of the county.” These are to be examined, settled and allowed, by the board of supervisors; and the fourth section of the same title, contains the general direction before mentioned, that accounts for county charges of every description shall be presented to the board to be audited by them.
It is said the statute is directory only, and if the plaintiff’s claim fall within the description of a county charge, it was optional with him to submit it or not, to the board of supervisors.
We cannot give such a construction to the statute. The *474 fourth section is peremptory in its terms, that all accounts for county charges shall be submitted to.the board; and it is an essential part of the whole system, framed with the intention that no action at all should be brought against a county for such services.
There is no hardship in the provision of the statute thus construed. The services in this case were rendered voluntarily, as the plaintiff might have declined to render them, if he did not approve of the mode of compensation provided by law.
We find no adjudged case, where it has been held that an action may be sustained against the supervisors of a county, for such claims. There are many cases reported, in which writs of mandamus have been issued to boards of supervisors. There is none of those, where the amount to be audited was not fixed by statute, or where the amount claimed was not admitted; and where the sole question was, whether the claim presented to the board was a county charge; and in those cases, the supreme court has ordered the supervisors to proceed and audit the claim.
The plaintiff refers us to the case of Ex parte Lynch, (2 Hill, 45.)
There the supreme court refused to issue a mandamus, to the supervisors of the city and county, because the relator had an action against the corporation of the city of New York, inasmuch as the statute directed the corporation to pay him a specified salary. It was not intimated that he could maintain a suit against the county, or the board of supervisors. And where that court has granted the writ of mandamus, it has been because there was no remedy by action. (The People v. Supervisors of Columbia, 10 Wen. 363.)
We find no case in the books, where the idea is presented, of bringing an action ugainst a county, or against a board of supervisors, for such a claim as the plaintiff’s; or where it appears to have been thought of before.
This disposes of the case before us, and it is perhaps not necessary that we should notice another view of the matter, which is urged by the defendants; that the board of supervisors, by their acts, can charge their county only in the mode *475 prescribed by the statute. That here the action on which the plaintiff’s claim is based, was wholly informal and ineffectual; the board as a body, never having acted at all, or adopted any resolution on the subject, and never having authorized any committee to engage the professional services of the plaintiff.
It may well be questioned, whether their action as a board, or of their committees, as proved in this case, could charge the county as a body politic. But we need not decide the point.
The plaintiff must fail, on the ground that his claim is a county charge, for which no action can be sustained against the board of supervisors. The report of the referees must be set aside, with costs to abide the event of the suit; and the rule directing a -reference will be discharged. The parties can readily turn the special report of the referees into a bill of exceptions, as upon a trial at nisi prius, and a non-suit there ordered, if they choose to do so, with a view to ulterior proceedings.