Case No. 8,618.

LYELL v. LAPEER COUNTY.

[6 McLean, 446.] 1

Circuit Court, D. Michigan. June Term, 1855.

COUNTIES—COUNTY TREASURER—ORDER OF BOARD OF SUPERVISORS—PRESENTMENT AND DEMAND—NOTICE OF DISHONOR—NEGOTIABILITY—JURISDICTION OF FEDERAL COURT.

1. Counties are established by law, and need not be proved.
[Cited in Cluck v. State, 40 Ind. 273.]

2. Rev. St. Mich. 1846, p. 70, § 40, providing, "that the county treasurer shall pay money on

1 [Reported by Hon. John McLean, Circuit Justice.]

the order of the board of supervisors, countersigned by the chairman and signed by the clerk," an order in that form will be presumed to be correct, and the official act of the board of supervisors.

3. Such an order is a county liability, drawn by one county officer upon another, for payment out of county funds, and no presentment and demand and notice of dishonor are necessary.
[Cited in Pelton v. Crawford Co., 10 Wis. 72; International Bank v. Franklin Co., 65 Mo. 114.]

4. The statute expressly authorizes such orders for county indebtment, to be drawn by the board of county supervisors, and does not provide that they may not be negotiable.

5. An action lies against the county upon such county orders in the United States court, when the sum in controversy and the character of the parties confer jurisdiction.
[Cited in M'Lean v. Hamilton Co., Case No. 8,881; Vincent v. Lincoln Co., 30 Fed. 752.]
[Cited in Savage v. Crawford Co., 10 Wis. 54.]

Motion for a new trial.

Gray, Campbell & Toms, for plaintiff.
Hand & Goodwin, for defendants.

[Before McLEAN, Circuit Justice, and WILKINS, District Judge.]

WILKINS, District Judge. This action was brought by the plaintiff [James Lyell], a subject of the queen of Great Britain and Ireland, against the board of supervisors of the county of Lapeer, on a county order described in the declaration as follows: "$500 —— —— receivable for taxes, ——, No. 1089. Treasurer of Lapeer County, pay to G. Williams or bearer, $500. By order of the Board of Supervisors, with interest. G. A. Griffin, Chairman. Wm. Beech, Clerk. Lapeer, June 22, 1848." During the trial a number of exceptions were taken to the rulings of the court, and the questions raised form (with the principal objection as to the power of these county functionaries to grant such orders to county creditors,) the basis of the present motion. The order having been produced and identified by the plaintiff, it was further proved that it was in the form usually observed by the various boards of supervisors of the organized counties of the state, in the liquidation of county indebtment; and that the parties by whom it was executed, held, at the time, to the organized county of Lapeer, the official relation of chairman and clerk of the board of supervisors, which the paper represented, and that a demand was made by the bearer upon the treasurer of the county for payment.

1. It was contended by the plaintiff's counsel that "the board of supervisors of Lapeer county" was not a corporation, and there was no evidence of such fact given to the jury. The county of Lapeer was organized by a public law of the state, and therefore need not be proved. And by the Revised Statutes of 1846, each organized county is declared to be a body politic and cor-

porate, with authority to contract debt for county purposes, and with liability to be sued on its contracts. Rev. St. 62, § 3. By a subsequent section, it is provided that "whenever any controversy or cause of action shall exist between any county and an individual, such proceedings shall be had in law or equity, as in other suits between individuals, and in all such suits, the name in which the county shall sue or be sued, shall be "The Board of Supervisors" of such "County." These legislative provisions are not superceded by the 1st section of article. 10 of the constitution of 1850, which declares "that all suits and proceedings, by or against a county, shall be in the name thereof." It is certainly not to be reasonably supposed that the new constitution, by this clause, restricts suits for or against counties, to the political or geographical designation by which one county is territorially known from another. The law of 1846, in existence when this contract was made, employs the same language as designative of geographical bounds; and to carry into effect its provisions in relation to suits, directs by name the functionaries upon whom process is to be served. A county is an empty name, for judicial purposes. It would serve no object to sue in that name, without further provision as to the functionary which should legally represent the county in court. The legal name of the county is given by law, and that name or title is the "Supervisors of" said "County." The constitution leaves the old law in force. But if the objection was valid, it should have been pleaded in abatement, and the right name given. Great injustice would now be done by countenancing such an objection, after the case has progressed to an issue.

2. It is further urged that this court has no jurisdiction in the cause, the defendant being a political body of the state, and not amenable to legal process in the United States court. By Rev. St. 1846, p. 66. §§ 2, 7, it is provided that "the board of supervisors of each county shall have power to examine, settle and allow all accounts against the county, and that all such accounts shall be presented to and be adjusted by the board of supervisors, who shall have power to direct the raising of such moneys by taxation, as shall be necessary to defray the county charges and expenses." This provision, it is contended, gives the board of supervisors the exclusive jurisdiction of all claims against the county, and even limits their subject matter to accounts and county charges for incidental expenses. The county warrant upon which the suit is instituted, purports on its face, to be "by order of the supervisors," and for an account settled and adjusted by them; and consequently within the power conferred upon the board "to examine, to settle and to allow." It is drawn upon the treasurer of the county, as the officer intrusted with the

county funds. It is made payable with interest, forasmuch as the board, knowing the pecuniary concerns of the county, and that its treasury was then unable to meet the demand, thus "settled" the same, anticipating the exercise of the other power conferred— "the raising of the money by taxation."

The note described in the declaration, and introduced as part of the plaintiff's testimony, is properly termed "the evidence of the claim," and of its allowance by the legal authority of the county. It is the custom of such organizations, when claims are allowed, to issue their orders on the treasury for their payment. The debt exists, independent of the order or warrant, and the form in which such instruments may be framed, does not affect the question of power. The case of Brady v. Supervisors of New York, in 2 Sandf. 460, so much relied upon, does not cover the facts of the case under consideration. The statutes of New York required that every claim should first be presented to the board of supervisors for audit, and consequently the court held that as such had not been the fact, that the action did not accrue until after such presentation. Such was the principle of the decision. But here the order for payment is evidence that the claim has been duly presented, as required by the statute, and properly allowed by the competent authority. The board has already acted on the subject matter, and adjudicated the claim. Wherefore the necessity of a re-presentment of this order to every new board as a county charge? The treasurer must have funds wherewith to pay, and if the treasury be empty, it would be but a repetition, ad infinitum, of the same matter for allowance and settlement. Such is not the requirement of the statute. Unquestionably, the matter of claim must first be presented to the county board for allowance and by it be settled; but when allowed and settled, and the claim assumes, by the action of the county board, the shape of a county warrant or order, it may, if unpaid from any cause, be the subject of a suit against the county. The statute having declared the organized counties of the state corporations for the purposes of suit, and conferred upon them the power to contract debt, it follows that such contracts may be enforced by suit. The rights of the contracting parties are reciprocal. If the county can sue, it can be sued. And whatever remedies the state may bestow upon its counties to enforce their just claims, and whatever tribunals may be organized by state legislation for the determination of controversy between its own citizens and bodies politic, yet such legislation cannot affect remedies conferred upon others by the laws of the United States. It cannot compel foreign suitors to select the tribunals of the state in which alone to seek the recovery of their just demands; it cannot deprive a party of a right

of action secured to him by the constitution and laws of the United States. The plaintiff, a foreigner, brings his action of assumpsit, and specially declares upon the county order exhibited in evidence, and it has been settled in the case of Bank of Columbia v. Patterson [7 Cranch (11 U. S.) 299] 2 Pet. Cond. R. 501, that assumpsit is the proper form of action. The claim having been allowed, the county assumed its payment, and gave to its creditor this evidence of their assumption.

It is unnecessary to consider the argument of the counsel in relation to the power of the United States court to issue a mandamus to state officers, as the question does not necessarily arise. This court is now asked for judgment upon the verdict. The proper enforcement of that judgment by the appropriate process, is another matter. But the form deemed necessary by the supervisors, in framing their warrant upon the county treasurer, has occupied other objections to this verdict upon the part of the defendants. The order is numbered 1089, as a measure of precaution, by the clerk, and as a check upon the treasurer. A declaration is prefixed, forming no part of the substance of the order itself, that it will be "receivable for taxes." And the treasurer is directed to pay the sum specified to a person named, "or to bearer." Now it is contended that the case made by the plaintiff on such paper does not entitle him to recover, because the instrument on its face is negotiable, and the statute confers no such authority upon the supervisors of the county; that it is a bill drawn by one set of county officers upon another county officer, and by the bearer ordered to be paid to the present holder; and that, being negotiable, there was no proof of acceptance or notice for non acceptance. The statute meets all these objections. By its clearly expressed provisions, the board of supervisors are directed to meet annually in their respective counties, to organize by the selection of one of their number as chairman. The county clerk is directed to serve as clerk of the board, and to keep a record of its proceedings, to preserve and file all accounts audited and allowed, and to attest by his signature all orders of the board on the treasurer for the payment of money. This board, thus organized, are also expressly authorized "to examine, settle and allow" all accounts presented against the county, to direct the payment of the same by the necessary orders, and (in the language of the statute law) "as it incidentally may deem expedient." This board is also authorized to borrow money, not exceeding $15,000, for the erection of county buildings and bridges, and to provide for the payment of the same with interest thereon. It is also fully authorized to make provision for all the expenses of the county. The statute also provides that a county treasurer shall be biennially elected. who shall have the custody of the moneys belonging to the county,

from whatever source derived, and who is restricted in disbursing the same to the written or printed orders or drafts of the board of supervisors, signed by its clerk, and countersigned by its chairman. No particular form of words in which these orders shall be framed, is anywhere prescribed in the statute. Nor is the board of supervisors confined, in the negotiation of a loan of money for the purposes specified, to any particular record or evidence of the transaction. The clerk must make a record of it, and the board can direct such further evidence of the same, as they may deem expedient, to be given to the capitalist loaning the county his money; and the same, when received, is directed to be placed in the county treasury, subject to the drafts or orders of the board of supervisors. signed and countersigned by the clerk and chairman. And when such orders are so granted, they import ability and fidelity in the auditing tribunal, which allowed the accounts on which they are based. It is not for the court to go back of the order, in a case like the present, and inquire whether or not the supervisors were deceived or misled,—whether or not they exceeded their power in borrowing more money than the law allowed. The order speaks for itself; and being under the sum of $2,000, the limit fixed by section 10th, over which a loan cannot be negotiated without special notice, it will be presumed that it was fair in its inception, and in its transfer to other parties. and was for a legitimate consideration. Fraud cannot be inferred from the face of the paper; and it is not consistent with the policy of the statute, nor would it subserve any public purpose to sanction, without evidence of fraud, the repudiation by one county board of the solemn acts of its predecessors. The board, having power to contract for certain purposes, "as may be deemed expedient, and having power to borrow money, it is within the spirit and scope of their authority, to issue—either in payment of adjusted accounts, or, as certificates or evidences of money loaned, such orders on the county treasury, as that described in the declaration. And more especially where an account has been examined and allowed, is it competent for the board to direct it to be paid by the treasurer in such way as shall work no injustice to the county creditor, by affording him the power. in the form of the draft, to raise money upon it, should the county treasury not be in sufficient funds at the time to liquidate the amount." And, although the instrument is in mercantile form —"payable to order"—it is not mercantile currency, and subject to the mercantile law as to presentment and notice of dishonor. It is no more than a county order, made payable to bearer for the convenience of the county creditor, and correspondent with the existing exigency of the county treasury. It is the evidence of a county liability, assumed by the appropriate functionaries: drawn by one county officer upon another, and calling for pay-

ment out of the county funds. On its face it is official, on its face it is notice to the county, and being outstanding, the evidence of its non-payment is of county record. It is in effect, a bill, drawn by the county on itself, of which there need be no notice of dishonor. Notice is only required where knowledge is necessary to enable the drawer or indorser to take means for self-protection. The principle does not apply where the drawer and drawee are identical.

In carrying out the provisions of the statute, in relation to public buildings, or other necessary county improvements, (a statute designed to meet the wants of a new county) it was necessary to clothe the counties with authority to contract debt, and to anticipate the resources of future taxation. To induce immigration, roads must be made, bridges built, court houses and jails erected, &c. The spirit of the statute embraces the negotiation of loans upon the prospective value of the taxable property of the county. Each organized county is required by law, at its own expense, to provide suitable court houses and jails, and fireproof offices for public and private records: and for these purposes money can be legally borrowed by the supervisors. The history of the county shows, that newly organized counties could not, without great oppression, respond to the demand of the statute, and borrow money, for any purpose, without making provision for interest, and the immediate negotiability of their corporate evidences of indebtment. The objection to this verdict on the ground that the board of supervisors could not lawfully make a negotiable order on the county treasury, payable on demand to bearer, and with interest, is not considered sufficient. The other reasons for a new trial are embraced within the view taken by the court as to the extent of the official authority of the county board. It does sufficiently appear, that the order or draft, upon which the action was instituted, was made by the statutory authority of the county legally expressed. The statute provides, that the treasurer shall pay such drafts, when signed and countersigned by chairman and clerk as required—there was evidence that G. Griffin was the reported chairman, and William Beech was the reported clerk, in the year 1848, of the board of supervisors of Lapeer county. If such was not the fact, the testimony could have been easily rebutted or overcome by higher proof within the power of the defendant, viz: the public records of the county in possession of defendant.

McLEAN, Circuit Justice. This was taken under advisement at the last term, it having been tried by a jury at a previous term, before the district judge, at which time certain questions of law were raised, with the view of having them adjudged by a full bench. This action was brought on the following instrument: "$500, receivable for taxes, No. 1080. Treasurer of Lapeer County, pay to G. Williams or bearer, five hundred dollars, by order of the Board of Supervisors with interest. Lapeer, June 22d, 1848. Signed, Wm. Beech, Clerk, and G. A. Griffin, Chairman." The declaration set forth this instrument specially, to which the general issue was pleaded, without affidavit. Afterwards an affidavit was filed, without application to the court or notice to the plaintiff. Under the rules of court, a copy of the declaration was served on the defendants, which was notice to them, and they have appeared. At the trial parol evidence was given of the signatures of the parties to the instrument, and that they acted in the capacities assumed.

It was objected that the defendants are not a corporation, and that on the trial there was no proof of that fact. The counties of a state are organized under a general law, of which the court will take notice. There was, therefore, no proof on this point required.

It is also objected, that the action is misconceived, as the first section of the tenth article of the constitution of 1850 declares, "that all suits or proceedings by or against a county, shall be in the name thereof." This, it is supposed, supercedes the 27th section of the revised law of 1846 (page 65) which authorizes suits to be brought against a county, in the name of the "Board of Supervisors." This would be the case had a proper plea been filed, and had not the new constitution in the same section provided, that the existing law should remain in force until changed.

It is also urged, to show a want of jurisdiction in this case "that the board of supervisors has exclusive jurisdiction of the subject matter of this suit; and that the statute requires all demands against a county to be presented to and settled by such board. And the case of Brady v. Supervisors of New York, 2 Sandf. 460, is referred to as sustaining the objection. That the statutes of New York and Michigan are the same, that "all accounts against any county shall be presented to and settled by the board of supervisors." The decision referred to in Sandford was right, as it involved an open account, which had never been adjusted. But that has no application to the case before us. The note or whatever it may be denominated, is an order by the board of supervisors, on the treasurer of the county for the payment of five hundred dollars, with interest. This is, therefore, a promise of payment of a debt acknowledged to be due. The 32d section of the act which regulates proceedings against counties, declares (Rev. St. 1846) that when a judgment shall be recovered against the board of supervisors, &c., no execution shall be awarded or issued upon such judgment; but the same, unless reversed, shall be levied and collected as other county charges, &c.; and it is argued the only mode by which this duty of the county officers can be enforced is, by mandamus; and that as this court cannot issue such a writ to a state officer, it can exercise

no jurisdiction in the case. And the cases of Kendall v. U. S. 12 Pet. [37 U. S.] 524, 615; McIntire v. Wood [7 Cranch (11 U. S.) 504] 2 Pet. Cond. R. 588. Where it was held, that the power of the circuit courts of the United States to issue the writ of mandamus is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. And it was held in the Case of Kendall, that the jurisdiction of the circuit court of the United States for the District of Columbia, in this respect, under the law of congress, was greater than the other circuit courts of the United States.

On the obtainment of a judgment, it is the duty of the supervisors to levy a tax on the county and pay it. Now, the objection which is urged against the jurisdiction of this court is, that the county officers in the present case may fail to do their duty, and this court cannot coerce them by mandamus. This is a presumption which cannot be entertained, as now urged, and consequently, the point need not be decided. This court, sitting within the state of Michigan, administers its laws, following in most instances, the remedies provided by the local laws. Those remedies are adopted by acts of congress, or by rule of court, and they become, in effect, the laws of the United States. And these laws are acted on by the courts of the United States, under the construction given to them by the state courts. Under the statute of the state, the courts of the Union sustain a creditor's bill, and give effect to a new remedy created by statute, where such remedy is appropriate to the exercise of a common law or chancery jurisdiction. But the question as to the power of this court to issue a mandamus in the present case, is not now before us, and need not be decided. It may be that the remedy in the state court may be more simple and more effectual than in this court, but this is not a matter for our consideration. The plaintiff having a right to sue in this court, has sought his remedy here, and we can exercise no discretion in the case, which does not rest upon legal principles. A verdict has been obtained by the plaintiff, and the question is now made, whether he shall realize the fruits of the verdict, or be thrown out of court, and pay the costs which have accrued. The objections to the form of the order, on which the action is brought, are not sustainable. It is evidence of indebtment by the county, and a peremptory order to the treasurer to pay the amount. A bank might as well say, when one of its notes is presented for payment, that it is no evidence of an obligation to pay, as for the treasurer in this case to object. As the supervisors have power to borrow money, a presumption may be raised that the order in question was given for money loaned, or in payment for labor, or some article of value received. It is evidence of indebtment which can only be set aside by showing fraud in the county officers,

in which the plaintiff participated. The want of power in the supervisors to give such an instrument is alleged. The law gives them power to loan money, and have they no power to acknowledge the indebtment? Under such a restriction, they could hardly be expected to be successful borrowers. The powers of the supervisors are ample under the statute, and there is nothing in the case which shows that their powers were not strictly and legally exercised. A demand on the treasurer was proved on the trial. If the treasurer had set up in his defense, that he had the means of payment in his hands, and was always ready to pay the order, it might show that the suit had been prematurely commenced. But as the order bears date seven years ago, it is not probable that the treasurer has had the means of payment. A county cannot claim the immunity of not being sued under the eleventh amendment of the constitution. If every county could throw itself on its sovereignty, and hold at defiance the judicial power of the Union, we should have in the country more sovereignty than law. It is again objected that the supervisors have no power to contract to pay interest. They have the power to loan money, but no power, it is contended, to agree to pay interest. This argument would have been stronger, had it rested on a usage not to pay interest, instead of a want of power to agree to pay it.

Upon the whole, I see nothing in this case, which authorizes us to set aside the verdict. A judgment is, therefore, rendered.