## COMMISSIONERS OF LEAVENWORTH COUNTY v. HENRY C. KELLER.

1. COUNTY WARRANTS—*Action against County.* An action can be maintained on a county warrant against the county.

2. WARRANT—CONSIDERATION—*Action—How Defeated.* An action on such a warrant is liable to be defeated by showing that the county board had no authority to make the allowance on which the warrant issued, or for the want of some prerequisite step enjoined by law, or for want of consideration, or mistake in the county board, or for fraud in obtaining the allowance.

3. —— *When regularly issued.* A county warrant signed by the chairman of the County Board, and a few days later signed and the county seal attached by the county clerk, who had succeeded to the office after the chairman had signed it, is a good county warrant.

4. COUNTY RECORDS—INDICES—*County Board.* A county board may have the records of deeds indexed when that has been neglected, and the indices already made, copied, when a necessity therefor exists.

5. CONTRACT—COMPENSATION—*Fee Bill—Statute construed.* Services for copying indices are not covered by the statute fixing the fees of register of deeds at ten cents per folio for copying any deed or paper, and may be fixed by contract or by proper allowance by the board.

6. ALLOWANCE OF CLAIM BY COUNTY BOARD—*Not Conclusive. Instructions—Error.* The allowance of a claim by the County Board is not final and conclusive. It may be re-examined by the Board itself, and on appeal may be examined and disallowed in whole or in part by the court. And it is error to instruct the jury that the allowance of a claim by the board " is an adjudication as binding on the parties as the judgment of a court."

*Error from Leavenworth District Court.*

ON the 7th of November, 1867, the county board of commissioners of Leavenworth county adopted the following resolution, to-wit:

" *Resolved*, That H. C. Keeler be, and he is hereby

authorized to make a correct copy of the indices from January 1, 1860, to December 31, 1866, inclusive; and that in the indices so made, all the tax deeds on record that have not been indexed, be included in and made a part of said index."

On the 9th of January, 1868, *Keller*, who was Register of Deeds, having with the aid of his assistants in the Register's office completed the indices mentioned in the resolution, presented his bill to the county board, claiming for "re-indexing records," 28,160 index-entries, at 10 cents for each entry, $2,816; and for "indexing tax deeds," 11,712 index-entries, at 10 cents each, $1,171.20; making a total of $3,987.20. The county board audited and allowed his bill on the 10th of January, and a county warrant was drawn in favor of *Keller* for said amount, and signed by the chairman of the board. At this time, one S. J. Darrah was county clerk. On Monday, January 13th, O. Diefendorf, county clerk elect, qualified and entered upon the duties of his office; and afterward, said Diefendorf, at *Keller's* request, attested said warrant as county clerk, and affixed thereto the seal of the county board.

*Keller* subsequently received from the county treasurer $1,180.89 on his warrant; and being unable to obtain the balance, he brought suit therefor against *The County Board of Commissioners of Leavenworth County*, counting on said county warrant. The defendants answered, alleging that the warrant was void, not being legally and properly issued; that no action could be maintained on a county warrant; and that the county board had no power or authority to make a contract with the Register of Deeds for performing the work for which the warrant was issued, and claiming that the measure of liability of

the county, if any, was determined by the statute fixing the rate at " ten cents per folio."

On the trial evidence was given tending to show that the board of commissioners had contracted with *Keller* to pay him ten cents for each index-entry; and one *Van Doren* was called for the defendants and testified that he had counted the words of some of the indices, stating the number of folios; he also stated that there were a few which he had not counted. The court among other instructions charged the jury that " there was no law " which fixed the plaintiff's compensation." * * " It " was a matter left to the plaintiff and the county board " to determine by *contract*, if they saw fit to contract, or, " if no contract was made, then it was for the board to say " what those services were worth—how much they would " give the plaintiff for them; and if without fraud they " allowed the plaintiff's claim, that allowance was an " adjudication of the matter, and was binding upon both " the plaintiff and the county of Leavenworth, as much " so as a judgment of this court in the matter." Defendants excepted.

Verdict and judgment for the plaintiff for the amount of his claim; and a new trial being overruled, the *County Board of Commissioners* bring the case here for review.

*D. J. Brewer*, county attorney, for plaintiffs in error :

1. Keller claims $2,816 for 28,160 index-entries; at ten cents per folio for copying, it amounts to only $662.70. His bill also charges $1,171.20 for indexing tax deeds, while the testimony shows that there were only 10,440 index-entries of tax deeds, which at ten cents each, amounts to only $1,044.

The fee fixed by law for " copy of any deed or paper,

when required by any person or by law, was ten cents per folio." Ch. 31, Comp. Laws, 1862, p. 561, § 6. "The word person may be extended to bodies politic and corporate:" Id., 838, clause 13th. It can make no difference what use the person requiring the copy desires to make of it, whether to leave it in the office of the Register of Deeds, or remove it therefrom. Nor can it affect the question that the copy is to be made of an entire volume, instead of one page of it.

2. The allowance by the county board is not a final adjudication so far as to prevent inquiry into its correctness by the county. The jurisdiction of the County Board is created by statute. The power that created, can limit and qualify. Sec. 3, p. 74, Laws 1865, in force when this allowance was made, and continued substantially to the present time, provides " that all fees, costs or other allowances, or any legal fees obtained from or allowed against any county, *when the same is not authorized by law*, may be recovered back in a civil action, in the name of the proper county, in any court of competent jurisdiction.",

This provision limits and qualifies the jurisdiction of the county board. To say that an allowance by the board may be recovered back when not authorized by law, and at the same time to say that that very allowance determines its legality, is simply absurd. This section is not limited to cases of fraud; nor to cases where the subject-matter of the allowance is beyond the power of the county board to contract concerning. The plain, obvious, natural interpretation of the language is the correct one—*whenever* any allowance is made by the county board, and it afterwards appear that such allowance was not authorized by law, in whole or in part,

33

whatever may be the grounds of such illegality, then such *illegal* allowance may be recovered back.

.And *a fortiori*, if such illegal allowance may be recovered back, when suit is brought on such allowance, its illegality may be shown as a defense. The law does not contemplate any such absurdity as compelling a payment, and then bringing suit to recover such payment. 20 Cal., 593; 6 Hill., 244; 35 Barb., 408.

3. The County Board had no power to make a contract of the kind shown with the Register of Deeds. Nor could it make a legal allowance of any amount for such work to Keller. 1 Kas., 432; 2 id., 115.

4. No action can be maintained on a county order or warrant. The action must be on the *allowance*, if any direct action against the county can be maintained. But it is submitted, that if any direct proceeding can be maintained, then the remedy of defendant in error is *mandamus*. 19 Penn. St., 200; 50 id., 351; 36 Ala., 613.

5. The county order was delivered to Keller unattested by any clerk. The fact that after a change in the officers of the county, he persuaded an incoming clerk to attest it, does not make that paper legal, which, when he received it, was void.

*Clough & Wheat*, for defendant in error:

1. There is no law which made it the duty of Keller to index the records of his predecessors in office; nor to make good the negligence of others; nor to supply new indices to the old county records at ten cents for each hundred words of *index* matter. The services were extra-official, and a proper subject of contract. Whether the index-entries were or were not equivalent to 662,700 words, was not stated, nor was there any attempt made

to show by the evidence; nor was it material how many words the index-entries were composed of.

Keller's account was for a certain number of index-entries, positively testified to by him; Van Doren claimed to have counted the number of tax deeds, but he stated that there were a few which he had not counted. The jury passed upon this question, and their verdict is conclusive.

When the law does not fix any sum or fee, the Board, as a contracting party, can. 23 Barb., 370; 33 id., 603; 35 Cal., 664.

2. The county board had power to employ Keller to do the work by him performed at its instance. The Board of County Commissioners have general charge of the affairs of the county, (§ 3, p. 409, Comp. L., 1862;) and the power "to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporative or administrative powers," (subdivision 4, § 1, p. 409;) and it was the duty of the said board "to make such orders concerning the property belonging to the county as they might deem expedient," (subdivision 1, § 15, p. 412;) and to represent the county, and have the care of the county property, and the management of the business and concerns of the county in all cases where no other provision was made by law, (subdivision 5, same section.)

It is the duty of the commissioners to have the records re-indexed whenever necessary, and also to have the record of such of the tax deeds (as had not been before indexed,) properly indexed. 28 Mo., 586; 9 Bosw., 433; 2 Sandf. 460; 23 Barb. 370; 59 E. C. L. R., 534; Gilpin, 356; 35 Cal., 664; 10 N. Y., 568; 12 Wis., 512; 16 Ill., 312.

The evidence shows the indexing of tax deeds was only of such tax deeds as had been recorded before Keller

became Register of Deeds. It was not, and never had been, his duty to index such tax deeds as were for the first time indexed under this contract. As to the re-indexing, that also was of deeds recorded before his two-year term commenced; and it was not his official duty to re-index any deed. Such re-indexing, when necessary, was like the matter of indexing the tax deeds, a public necessity, proper for the county, through the board of county commissioners, to employ some competent person so to do. The fact of Keller acting as Register of Deeds at the time, made no difference; it was not his official duty to make any of the indices mentioned in the resolution of November 7, 1867.

The claim of Keller was audited and allowed, and the amount is conclusive against the county. The county is bound by the allowance, though wrong: 16 Ind., 29. The board cannot review or reverse their own action; 35 Barb., 408. Nor can a new board; 25 Penn. St., 305; 4 Wend., 455; 29 N. Y., 645. Settlement cannot be opened to correct errors : 3 Watts and Serg., 542.

Keller, at the instance of the Board of County Commissioners performed the services at a stipulated price previously agreed upon. The board then, on examination of his work, became satisfied he had performed his contract and allowed his claim. This operated as a ratification; and the same rule as to agents, ratification, estoppel, etc., are applicable to public as to private corporations or individual persons: 11 Wis., 490 ; 34 Vt., 236, 17 N. Y., 450 ; 1 Carter, 281; 16 Cal., 264; 38 Ill., 266; 14 Penn. St., 81; 1 Hilton, 562 ; 7 Greenleaf, 75 ; 42 N. H. 136 ; 4 Ohio St., 100.

3. One of the defenses set up by the plaintiff in error only goes to the question as to *when* Diefendorf was

county clerk, or *when* authorized to affix the seal to an instrument; it does not deny his being county clerk at *the time* he attested and sealed the order.

It was the duty of the chairman of the board of county commissioners to sign the order, and of the county clerk to attest it. If either refused, they could, by mandamus, have been compelled to perform such duty: Code of 1859, § 580; 19 Ohio, 178; 24 N. Y., 123; 8 Peters, 291.

And if the term of office of either of such officers expired before performing such duty, then of course the same duty devolved on their successors: 8 Ohio St., 347; 20 Vt., 487.

And of course an officer can voluntarily perform an act which it was his duty to perform, without waiting to be compelled by mandamus: 5 Denio, 523.

4. The county sought to recover from Keller *the amount* of the order—more money than it had ever paid him; and to do so it relies on § 3, ch. 28, Laws of 1865, and upon its claim of "want of power" to pay him for the services which he had performed. Said § 3 was repealed (Gen. St. 1868, p. 1127, § 2,) before this action was commenced, and the right, if any, fell with the repeal.

But whatever was done by the county in the matter of issuing the order, or making any payment, was done voluntarily, and the county cannot recover anything on account thereof. Chitty, 698; 2 Greenl. Ev., § 123; 2 Phil. on Ev., 118; 1 Taunt., 142; 9 John., 390; 7 Hill, 159; 12 Pick., 13; 19 Ark., 651; 16 Ind., 29; 2 East, 469, 9 Cowen, 674; 15 Me., 45.

The opinion of the court was delivered by

KINGMAN, C. J.: This is a proceeding in error to reverse a judgment of the Leavenworth District Court, by

which Keller recovered against the county the balance due on a warrant given him by the county in January, 1868, for certain services theretofore rendered by him.

The action was on the warrant; and such an action may be maintained. The warrant drawn on the treasurer is *prima facie* evidence of the indebtedness of the county. It is predicated upon an allowance made by the authorized agents of the county. It passes by delivery. If on presentment to the treasurer it is not paid, it bears interest; at least it did when this warrant was issued. County warrants are a subject of trade, and their value is quoted in market reports; and by statute certain officers are prohibited from trafficking in them. This point been frequently decided: see *Lyell v. Lapeer Co.*, 6 McLean, 446; *Campbell v. Polk Co.*, 3 Iowa, 470; *Clarke v. City of Des Moines*, 19 Iowa 199; *Savage v. Crawford Co.*, 10 Wis.. 49; *Bull v. Sims*, 23 N. Y., 570; *Floyd Co. vs. Day*, 19 Ind., 450; *Parsons v. Town of Goshen*, 11 Pick., 396;—and *contra*, 50 Penn. St., 351.

*1. COUNTY WARRANTS—County may be sued upon.*

A warrant is not like a bond of a county, issued only as an evidence of debt, and having a negotiable character; and an action on it is liable to be defeated by showing that the tribunal which issued it had no authority to make the allowance on which the warrant issued: *People v. Supervisors of Eldorado County*, 11 Cal., 170; *Stetson v. Hampton, et al.*, 13 Mass., 271; *Parsons v. Town of Goshen*, supra. Or, because there was no consideration, and the warrant was issued by mistake: *Campbell v. Polk Co.*, supra. Or, because of the want of some prerequisite step, enjoined by law: *Clarke v. City of Des Moines*, 19 Iowa, 199, and *Clarke v. Polk County*, same, 248.

*2. —— Warrant may be impeached; for what causes.*

In this case, it is claimed that the warrant itself was invalid. It may well be doubted whether the issues were so framed that this question can properly be made; but without stopping to examine this point, we will settle the main question. The testimony shows the order for the allowance was made by the County Board, and on the same day the warrant was written out, and signed by Mr. Dunlap, chairman of the board, and a few days later was signed, and the county seal attached by Mr. Deifendorf, who, after the allowance of the claim, had succeeded to the office of county clerk. The court instructed the jury on this point, that if the warrant was so signed and attested with the county seal, and at the times of the respective signing, Mr. Dunlap was chairman of the board, and Mr. Deifendorf was clerk, that the plaintiff had made out a *prima facie* case. This was correct. There is nothing in the testimony to show that there was any irregularity in the issue of the warrant, or that raises a suspicion that everything in relation thereto was not done in good faith.

*3. Issuance of warrant when regular.*

Again : It is claimed for the county that the county board had no authority to make any order in the premises. The work done was the copying of the indices of deeds for the county from January 1st, 1860, to December 31st 1866, a period of seven years, and to some extent correcting them, and making out an index to the Tax Deeds for the same time. The law provided that the counties shall have power " to make all contracts, and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporative or administrative powers." Comp. Laws, Ch., 52, § 1; (Gen. Stat., Ch., 25, § 1;) and the board represents the county, and has care of the county property,

*4. Records; indexing; power of county board.*

and the management of the business and concerns of the county in all cases where no other provision is made by law, (id., § 15;) and to make such orders concerning the property belonging to the county as they may deem expedient, (§ 15, clause 1.) The power thus conferred is very broad; still it has its limitations, not necessary now to be noticed. If a case can be reasonably supposed in which it would be necessary for the interests of the county to have the indices of the records of the county copied and corrected, then the power to do. so exists in such a case. And we can readily imagine causes that would make such a case necessary. As, if they were so near worn out as to threaten speedy destruction; or that the ink was fading, so that they were becoming illegible, and many other causes. As the record is silent as to the causes that in the opinion of the county board made the work necessary in this case, we are bound to infer that the necessity existed.

The indexing of the tax deeds may stand upon a different footing. It seems that for the seven years this had been neglected. This neglect of the register would render the records almost useless for the purpose of examination. Public convenience and public interest required that the work should be done. As those registers of deeds who had neglected the duty had gone out of office, there was no way to enforce the duty, and no way of remedying the evil, but by having an index made out.

Having the power to take the action they did, it remains to be seen whether the county board exceeded the

5. —— Contract; when valid; "fee bill" not applicable.

limits of their authority in the compensation they agreed to pay. When the necessity of the work had been determined upon, the board called Keller before them, and asked him what he would do it

for. He replied, for ten cents for each index. The board made the order to have the work done. Keller, who was register of deeds, copied the old index, with some corrections, and made out an index for the tax deeds; when the work was completed, Keller brought in his account for the work done, properly verified, and at the price he had stated. The board examined the work, allowed the account, and ordered the warrant now in suit. The plaintiff in error claims that he was entitled to only ten cents per folio for copying and correcting the indices, or less than one-fourth the amount really charged and allowed, for this part of the work. We do not think the law fixing the fee for copying at ten cents per folio was intended to cover such a case as this. In its terms it does not. The language is, "For copying of any deed or other paper, when required by any person, or by law, ten cents per folio." The copying done in this case was neither "a deed or other paper;" nor is it of the character of either of those classes. It was in testimony, that the labor of such copying was largely more than the same amount of ordinary copying. The correcting errors also formed part of the work, as appears from the testimony. As the law fixed no compensation for this class of work, it was competent for the commissioners and Keller to agree on a price, or for the commissioners to allow a reasonable compensation, after the work was done. Having made such a contract, and the work having been done in accordance with the contract, Keller was entitled to his pay therefor.

It is claimed, that as to the indexing the tax deeds he charged, and had allowed, $1,171.20, while he was entitled only to $1,044, having charged for more work than he actually did. This was a proper question for the

county board to examine. The account was itemized and verified, as required by law. The board examined the work, and made the allowance. The testimony leaves it uncertain whether Keller charged too much or not. A matter so easily susceptible of being ascertained with certainty, is left in doubt, as there were some deeds that the witness had not counted; and the jury might well have found under the testimony that the number of indices charged by Keller had been made. The settlement with the board was *prima facie* evidence of the correctness of his account. Still, under the pleadings, this was a fit and proper matter to go to the jury. The settlement of an account by a county board, is not more sacred than a settlement by individuals. They act as agents of the county; as such they made the contract with Keller, and as such, audited the account when the work was done. Had an individual stood in the place of the county, and made a settlement, and given his note, there can be no doubt that he could have corrected a mistake in the set-

6. Allowance by county board not conclusive. tlement, by appropriate judicial proceedings; and there is no reason for the application of a different rule to settlements made by a county board. Any other doctrine would invite to fraud, and lead to disaster. The court withdrew this question from the jury, saying that, "the allowance of the claim was an "adjudication of the matter, and was as binding upon "both the plaintiff and the county of Leavenworth, as "much so as the judgment of this court in the matter." This, after careful examination, we are constrained to say is erroneous. It is true, that the allowance was so far judicial, that an appeal could be taken from the decision, if adverse to the claimant; but not in the sense which is usually given to the word judicial. The appeal

is given that the case may be heard judicially, and the method of getting the case into court is by appeal. If the decision of the county board was final, in as broad a sense as is given to it in the instruction, then a party who had once had a claim rejected for any cause could not again present it for allowance, because it would be *res adjudicata*. Yet this is a thing that is constantly done, and the practice is unquestioned. For this error the case must be reversed. Exceptions were taken to the charge of the court on other points, but we are unable to perceive any error therein.

During the trial Keller was a witness, and while being cross-examined by the county attorney, was asked this question: "You knew at the time you presented this bill, what the legal fees were for copying?" This the court refused to permit to be answered, and rightly, for two reasons: The work was not copying merely; and the fees therefor were not regulated by law. Second, if the fees were fixed by law, the witness was presumed to know that fact, and there was no need of proving it.

The judgment of the district court is reversed, and cause remanded for further proceedings.

VALENTINE, J., concurring.