Taylor, J.
A brief statement of the facts out of which the claim of the relators in this case arose, will be necessary, to understand the points raised by the counsel on the final hearing. In 1874 the relators were employed by the Governor of this State to appear on the part of the State in the Supreme Court of the United States, and argue two cases then pending in said Court, in which one Harriman was the defendant in error. Harriman was an agent of the State, appointed under the provisions of Sec. 1, Chap. 46, Laws of 1866, to look after and protect the lands granted to this State by the United States and by this State to the “ St. Croix and Lake Superior Railroad Company.” These suits grew out of the seizure of large amounts of logs and timber by said Harriman, as suc'h agent of the State, upon a claim that they were cut upon such lands, and that the plaintiffs in error, in whose possession such timber and logs were found, were trespassers. The plaintiffs, in error denied the title of the State, and alleged that the title was in them, or if not them, in the United States.
The relators prepared a brief and argued the cases in the Supreme Court, on behalf of the State on the part of Harriman, the defendant in error. The decision of that Court affirmed the right of the State to the logs and timber. The amount in controversy in the suits was very large, and the decision also determined the right of the State to other large quantities of lumber and logs, as well as to the lands granted to the State by the United States. No agreement was made with the relators as to the amount of compensation they should receive for their services.
After the services were performed and the cases decided, the relators presented a claim of $5,000 for such services to the Secretary of State, and requested him to audit the same and *147 draw his warrant on the treasury for the payment thereof; the Secretary of State refused to audit the account or allow the same or any part thereof. The relators then presented their claim to the Legislature, and it refused to make any appropriation for the payment thereof; and after such refusal they commenced an action against the State m this Court to recover the value of their services. In that action this Court decided that the re-lators could not recover of the State for their services. (Sloan, Stevens & Morris v. State, 51 Wis., 623). The majority of the Court held that a judgment in favor of plaintiffs in that action would constitute a debt against the State on account of a work of internal improvement, and would therefore be a violation of Sec. 10, Article VIII. of the Constitution. It was also held in that case, that the plaintiffs were entitled to have their pay for the services performed out of any funds in the treasury collected by the agents of the State for trespasses upon said lands, and that their only remedy was to present their claim to the Secretary for. audit and allowance under the provisions of Sec. 5, Chap. 46, L. 1869, as amended by Sec. 1, Chap. 75, L. 1871; the Court holding that the claim clearly came within the spirit, if not the letter, of that section, which provides “that all compensation herein mentioned, and all expenses heretofore or hereafter incurred by any State officer, under direction from the Governor, in relation to the protection of said lands or securing such protection, shall first be audited and approved by the Secretary of State, and shall be paid by the State Treasurer, and a sum sufficient to pay the same to be audited as aforesaid, is hereby annually appropriated out of any money in the State treasury received from collections made by said agent or agents in pursuance of this act.”
After this decision, the relators again presented their claim to the Secretary of State, accompanied with evidence of their employment by the Governor. The Secretary refused to audit their claim, or any part thereof, upon the ground, as is alleged that he had no lawful authority so to do. The relators, upon an affidavit setting forth all the facts, applied to this Court for a writ of mandamus to compel the Secretary of State to audit their claim and draw a warrant upon the State Treasurer for the amount thereof. An alternative writ was issued, directed *148 to and served upon the then Secretary of State, Hans B. Warner. Upon the return day of the writ, the Secretary of State appeared by the Attorney-General, and made a return to the writ. The return to the writ admits, by not denying, the allegation in the writ that the relators presented their claim to him as alleged in the writ, and that he refused to audit the same or any part thereof, and by way of excuse for not auditing the same and drawing his warrant upon the treasurer, for the amount audited, he admits that the relators- performed the services as set out in the writ, but denies upon information and belief that the re-lators were employed by the Governor of the State to perform such services; and also, upon information and belief, denies that there is any certifícate of the Governor or any other State officer, on file in his office showing such employment. He then alleges that such services of the relators were not worth the sum of $5,000 demanded by the relators, and were not worth to exceed the sum of $500, and sets out some reasons why the relators’ services in the cases mentioned, so far as such services were rendered in behalf of the State, were not worth the sum of $5,000.
Upon the return made to the writ, it is very clear to us that the relators would have been entitled to the peremptory writ to compel the Secretary to audit and allow the account of the relators for their services at such sum as they were reasonably worth, and drew his warrant upon the Treasurer therefor, had it not been for the denial of the employment by the Governor. This is the only thing set out in the return which would excuse the Secretary from proceeding to audit and allow the relators’ claim for the amount which, upon investigation and proofs, they were shown to be worth. All other questions which could arise in the case were settled by this Court in the case of Sloan, Stevens & Morris v. The State of Wisconsin, supra. In that case it was held by all the members of the Court that the services if performed, as they were alleged to have been, upon the employment of the Governor, were a proper charge to be defrayed out of the funds in the treasury collected and paid in by the agents of the State, under the provisions of Sec. 5, Chap. 46, Laws 1869, as amended by Sec. 1, Chap. 75, Laws 1871. The services were strictly for the protection of the lands referred to in said act, *149 or for securing such protection. The litigation in which the services were performed grew out of acts done by the agents of the State in the discharge of their duties in the protection of such lands so held in trust by the State, and it was clearly equitable that the trust funds in the hands of the State, arising out of such lands, should be applied to the discharge of all compensations and expenses incurred by the State in protecting the same. Upon that point there was and is no disagreement in this Court. That question having been settled, and it also having been settled that the only method of paying such compensations and expenses was to present the same to the Secretary of State for audit and allowance under the provisions of the laws above referred to, it became the duty of the Secretary of State to proceed to audit the account of the relators upon proof that the Governor had employed them as they allege. We do not say that the Secretary should have audited the claim at the sum of $5,000, but at such sum as the proofs presented to him showed the services to have been reasonably worth. And for the purpose of ascertaining the real value of such services, the Secretary had the undoubted right to require the claimants to produce evidence, and he might also have taken evidence on the part of the State upon that subject. The fact that he supposed the services were not worth.the sum of $5,000, as charged, was no excuse for his not proceeding to ascertain their real value, and audit them at such value when ascertained. This, we think, is the well settled rule in cases of this kind. (See People ex rel. Johnson v. Board of Supervisors, 45 N. Y., 196, and the cases cited by the learned counsel for the relators in his brief). The case in 45 N. Y. was, in its facts, very much like the case at bar, and the Court of Appeals held that “An account for legal services must be presented to the Board of Supervisors of the county, and must be audited and allowed by them; but the amount to be allowed, in the absence of express contract or statute, is somewhat in their discretion. But where the same are legally chargeable to the county, it is the duty of the board, in good faith, to audit them, and on their refusal to act, a mandamus is the proper remedy to compel them.” Justice Folger, in delivering the opinion, p. 200, says:
“ Where an account is presented for service which is legally chargeable to the county, it is the duty of the board to audit *150 and allow it. How much shall be allowed rests on its discretion, in subservience to established legal rules. But it must take action, audit and allow the claim, when legal, at some amount. And if it does not, where there is no remedy by action, it can be compelled by mandamus to proceed so to do.” See also Brady v. Supervisors, 2 Sandf., 460; People v. Supervisors, 10 Wend., 363.
The case was, in all respects, like the case first above cited. This Court had decided that the relators’ claim was a proper charge against the trust funds in the Treasury, and that it was the duty of the Secretary of State to audit and allow the claim upon proper proofs presented to him of their employment and the value of their services, and that they had no remedy for their claim by action against the State. Upon this state of the case, the Secretary would only be justified in refusing to audit the account at all, if there was no proof of the employment of the relators by the Governor or any other State officer having power to make the employment. Upon the return to the writ, he justifies his refusal to audit the claim for want of proof of such employment. It was, therefore, a proper issue to be made in this action. It was made, and the issue has been found against the respondent, and the finding upon that point is fully sustained by the evidence. Upon this issue being found against the respondent, it is his clear duty to proceed to audit the claim, and a peremptory writ should issue directing him to do so. The relators ask that the writ should direct the Secretary of State to allow and audit their claim at the fixed sum of $5,000, and interest thereon at the rate of seven per cent, from the time it was first presented for payment to the date of allowance. Whether the relators are entitled to interest on the sum which is found due to them upon the claim is a question of law, and there can be no doubt hut this Court has the right to direct the Secretary upon that matter. The amount of the relator’s claim was unliquidated. It was not fixed by any contract. The amount they were entitled to recover if they had been- allowed to recover the same iff an action against the State, would have depended upon proofs showing what they were reasonably worth, and, upon the evidence, it would have been a question of fact for the jury, if the value of the services as claimed by the plaintiffs were denied by the State. We are *151 unable to distinguish this case from the cases of Marsh v. Frazer, 37 Wis., 149, and Shipman v. The State, 44 Wis., 458, and Martin v. State, 51 Wis., 407, in all of which, in like cases, it was held that the plaintiff could not recover interest. It also appears from the record in this case, that no competent proof of the value of their services was at any time presented to the Secretary of State when he was asked to audit and allow the claim. No value having been fixed to the services by agreement with any officer who had the power to fix the same, it was the duty of the party presenting the same for audit and allowance to fix such value by legal evidence, and it was clearly not obligatory upon the Secretary of State to receive the unsworn statement of any person upon that subject.
We are of the opinion that the relators are only entitled to interest on the amount claimed from the date of the verdict of the jury finding the value of said services. The learned Attorney General objects to the issuing of a peremptory mandamus'directing the Secretary of State to audit and allow the relators’ claim at the fixed sum of $5,000. Where the law does not fix the femount which is due the claimant, and such amount is not fixed by a valid contract, but is left to be fixed by evidence to be presented to the auditing officer, ordinarily this Court would direct the auditing officer to proceed to audit and allow the claim at such sum as the evidence produced before him showéd was due to the claimant. In this case, however, the Secretary of State, in his return, denies that the re-lators’ services are of the value of $5,000, as claimed by them, and alleges that they are worth but $500, and he has consented that the Court make no issue upon the value of such services, and that such issue should be tried by a jury in the Circuit Court of Dane county. That issue has been tried, and the jury has found that the services were worth the sum of $5,000. Having asked a submission of that question to a jury for the purpose of aiding him in the discharge of his duty as auditing officer, in case he should be directed to audit the same by the order of this Court, and the verdict of the jury upon that question being .abundantly supported by the evidence, we think the Secretary, as auditing officer, should be bound by it, and that he should not be permitted to require the relators to *152 make any further proof of the value of their services before him. However uncertain the value of their services might have been before this issue was tried and determined, that amount is now fixed, and should be audited as fixed by the jury. Had not the Secretary of State tendered an issue in his return as to the value of the relators’ services, my own opinion is, that this Court would not have passed upon the question, but have simply directed the Secretary to audit and allow the relators’ claim at such sum as the evidence produced before him showed they were reasonably worth. This was the order made in the case of The People v. Supervisors, 45 N. Y., 196. But having asked, for his own relief, that the amount of the relators’ claim should be fixed by the verdict of a jury, we see no objection to directing him to audit it at the sum fixed by the jury.
The learned Attorney General has made a very, able argument against proceeding further in this action, because Hans B. Warner, to whom, as Secretary of State, the alternative writ was issued, is no longer in office, his term of office having expired since the issuing of such writ, and‘another person having been duly elected and qualified as his successor. The peremptory writ must issue, if one be ordered in this case, to the person now in office. The objection is, that the present Secretary has not had his day in Court, and should not be commanded to do an act, against the doing of which he has had no opportunity of being heard. The learned Attorney General, to sustain this objection, relies very much upon two decisions of the Supreme Court of the United States. United States v. Bantwell, 17 Wall., 604, and Secretary v. McCarrahan, 9 Wall., 298.
These decisions are in point, and go very far to sustain the position taken by the learned Attorney General. The same question has, however, been before this Court and other State Courts, and a different conclusion has been reached under like circumstances. Soutter v. Madison, 15 Wis., 30; State ex rel. Bushnell v. Gates, 22 Wis., 210; The People v. Collins, 19 Wend., 56; Maddox v. Graham and Knox, 2 Metc. (Ky.), 56; People v. Shaut and Champion, Commissioners, etc., 16 John., 60; Pegram v. Covers, 65 N. C., 114.
*153 In the case of The People v. Collins, which was a mandamus to compel the supervisors of the town to open a highway, Justice Cowan, who delivered the opinion, says upon this subject:
“The duty is perpetual on the present Commissioners of Smyrna and their successors, and the peremptory writ may be directed to, and enforced upon, the Commissioners of the town generally. To say otherwise would be a sacrifice of substance to form.”
In the case of State ex rel. Bushnell v. Gates, which was a proceeding by’mandamus to compel the clerk of the town to insert in the tax roll the amount of a judgment in favor of the relator against the town, under the provisions of Secs. 77 and 78, Chap. XV, R. S., 1858, the late Justice Paine says:
“It seems the papers laying the foundation for this application were served on the predecessor in office of the respondent. It may.be that, in such cases, in proceedings to charge a party personally with contempt, some notice or request should be first served upon him, and that he ought not to be so charged upon the strength of the proceedings taken against his predecessor, of which he may, in fact, have had no knowledge. But, so far as the advancement of the principal remedy is concerned, it is to be regarded as a proceeding against the officer, and not against the individual; and where proper papers have been once served upon the officer, any proceeding wffiich they warrant may be taken against his successor without commencing de novo. This rule is essential to the due administration of justice, which might otherwise be baffled by the regular changes in office, or defeated by resignations made for the very purpose of destroying proceedings already commenced.”
It 'is true this decision was made before the decisions in 9 and 17 Wall., above cited, but it is supported by the authorities cited from other Courts, and is in accord with a later decision of the Supreme Court of the United States. See Commissioners v. Sellew, 99 U. S., 624.
In the case at bar, there was a continuing duty on the Secretary of State, as an officer of the State, to audit the claim of the relators. That duty rests as much upon the present incumbent as it did upon his predecessor, Hans B. Warner. There can be no good reason given why the peremptory writ *154 should not go against him, and the authorities clearly justify such a proceeding.
Ordered, that a peremptory writ of mandamus be issued, directed to the present Secretary of State of the State of Wisconsin, commanding him to audit and allow the relators’ claim at the sum of $5,000, with interest thereon at the rate of seven per cent, per annum from the 24th day of April, A. D. 1882, and to draw his warrant upon the State Treasurer for the amount so audited, in favor of the relators, to be paid out of any money in the State treasury belonging to the fund mentioned in Sec. 5, Chap. LXXV, L., 1871.