LAURA S. TAYLOR et al., as Executors, etc., Appellants, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

To compel a set-off both debts must have been due and payable at the same time, and before a change in the ownership of either.

It is not necessary, however, that, at the time, an action could have been maintained upon the debts; it is the condition or state of the demands at the time which is to be looked at, and not any special rule or regulation touching the situation of the debtor or creditor which prevents him from then bringing suit upon the demand, or requires something as a prerequisite.

The fact, therefore, that by the charter of a municipal corporation no action can be maintained upon a demand against it, until after presentation and demand of payment of some officer of the corporation, does not prevent a set-off of the claim in an action by the corporation upon a demand against the owner thereof.

A statute compelling such a presentment is an abridgment of a common law right, and so is to be construed strictly; and where it does not in terms include and prohibit a set-off, will not be extended to reach it.

Prior to the passage of the act consolidating the government of the city and county of New York, and imposing upon the city the liabilities of the county (§ 2, chap. 304, Laws of 1874), the Transcript Association having accounts against both the city and the county, for services rendered, assigned them to T., plaintiff's testator. At the time of the assignment, both the city and the county had claims against said association for overpayments on bills for services previously rendered; the county claims by virtue of said act (§ 1) were transferred to the city. In an action upon the accounts so assigned, *held*, that defendant was entitled to set off the demands so existing, both those in favor of the city and those so transferred to it; that the fact that, at the time of the assignment to T., the city could not have been sued for the debt owing from the county, and that the county claim could not have been set off by T.'s assignor in an action against it then brought by the city did not affect defendant's right to the set-off; *as when the city became liable, its liability was for the debt in the condition it then was*, with all the rights and defenses the county then had, and it was then a claim which could have been set off against a demand sought to be enforced by the county; also that the fact that under the law existing at the time of the assignment (§ 17, chap. 383, Laws of 1870) no action could be maintained against the city, unless the claim had previously been presented to the comptroller, and he had neglected to pay the same, and that the claim against the city had not been presented, would not have prevented a set-off of it, in case an action had been brought by the city upon its demand; also the fact that an action could not have been brought, at the time of the assignment, against the county on the claim against it; it being a county charge to be audited by the board of supervisors, did not prevent its being set off in a suit brought by the county on its demand.

*It seems* that the provision of the act of 1870, providing for the government of the county of New York (§ 2, chap. 382, Laws of 1870) which declares that no action shall be brought against the county until presentation and audit of the claim by the board of supervisors, or the unreasonable refusal or omission to act, did not alter the law as to county charges, or take the county out of the provision of the statute (1 R. S. 385, 386, § 3, subd. 15) protecting counties from actions at law upon county charges.

As to whether the principle that a State cannot be subjected to coercion by its own tribunals applies to prevent a set-off in an action brought by the State, *quære*.

The principle does not apply to a political division of the State, such as a county, and it is not inherent in the nature or the authority of a county that it cannot be sued and be subjected to legal process; the exemption must be by statute.

There, therefore, a county seeks to recover a debt by judicial process, a demand against it, upon which the defendant might not maintain an action by reason of the statute, may be allowed as a set-off.

As to the claims sought to be set off by the city, it appeared that by culpa-

ble negligence or criminal connivance on the part of officials acting for the city and county, in connection with rightful payments for work done and as parts of the same transactions, large over-payments were wrongfully made to the officers of the association, in settlement of suits brought by it. The payments were made in warrants, to the order of the association, which were indorsed officially by its authorized agent. *Held,* that in the absence of evidence that the officer so acting for the association was false to his principal as well as to its debtor, the presumption was that all the moneys went to the association; and the over-payments were proper matters of set-off against demands in its favor.

(Argued June 9, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendant, entered upon an order overruling plaintiffs' exceptions denying a motion for a new trial and directing judgment on a verdict. (Reported below, 20 Hun, 292.)

The nature of the action and the material facts appear in the opinion.

*C. D. Adams* for appellants. If mutual rights of a present action or a present set-off do not exist, an assignee takes a claim, free and clear of a set-off and none can attach afterward his hands. (2 R. S. *354, § 18 [6th ed.]; 3 R. S. 634, § 12, subds. 5 and 8; Old Code, § 150, subd. 2; 22 N. Y. 489; 37 id. 396; 2 Keyes, 486; 59 N. Y. 574; 64 id. 545; 74 id. 467; Old Code, § 112, construed; 5 Seld. 211; *Myers* v. *Davis,* 22 N. Y. 489; *Martin* v. *Kunzmuller,* 37 id. 396; *Williams* v. *Brown,* 2 Keyes, 486; *Patterson* v. *Patterson,* 59 N. Y. 574, 581; *Swift* v. *Prouty,* 64 id. 545; *Harroway* v. *Mayor,* 1 Hun, 628; 4 N. Y. Sup. Ct. [T. & C.] 167; *Berrian* v. *Mayor,* 15 Abb. [N. S.] 207.) The association never had the right to sue either the city or the county for the work in suit before the claims therefor were assigned to plaintiffs. (59 N. Y. 574; 16 Abb. [N. S.] 64–71; *S. C.,* 47 How. 458; 2 Sandf. Sup. Ct. 460; 10 N. Y. 260; 56 id. 466, 469; 70 id. 454; 52 id. 224; 2 Sandf. Sup. Ct.) Fraud must be proved. It will not be imputed to the corporation. (Angell

& Ames on Corporations, § 311; *Dabney* v. *Stephens*, 10 Abb. [N. S.] 39; 5 Bosw. 275; 40 How. 341; *Adams* v. *Mills*, 60 N. Y. 533.)

*Francis Lynde Stetson* for respondent. The city and county of New York were authorized to recover these moneys from the Transcript Association, they having been illegally paid. (*Supervisors of Richmond County* v. *Ellis*, 59 N. Y. 625; *People* v. *Fields*, 58 id. 491–505; *Wood* v. *Mayor*, 73 id. 556.) The Transcript Association received the moneys in question. (*Elwell* v. *Dodge*, 33 Barb. 336–342; *Hascall* v. *Life Association of Am.*, 5 Hun, 151; 66 N. Y. 616.) The releases under seal and the receipts in full being all made in behalf of the association, were sufficient proof that the corporation received the money in absence of all evidence to the contrary. (*Booth* v. *Farmers and Mechs.' Bk.*, 50 N. Y. 396.) The court did not err in refusing to submit to the jury the question whether the Transcript Association had ratified any of the alleged unlawful acts or frauds of its president. (*Harway* v. *Mayor*, 1 Hun, 628; *Wood* v. *Mayor*, 73 N. Y. 556.) The court properly refused to submit to the jury the question whether the Transcript Association authorized or committed any of the frauds or unlawful acts charged. (*American Ins. Co.* v. *Oakley*, 9 Paige, 496; *Mumford* v. *Hawkins*, 5 Denio, 355; *Oakley* v. *Workingmen's U. B. Soc.*, 2 Hilt. 487.) The association was responsible for the frauds, committed by its general agent and president, in the course of its business. (American Law Review, March, 1880, vol. 1 [N. S.], p. 178; *Beach* v. *Fulton Bk.*, 7 Cow. 485; *Bank of U. S.* v. *Davis*, 2 Hill, 451; *Sharp* v. *Mayor*, 40 Barb. 257.) The assignment to the plaintiffs did not prejudice the defendant's right to set off its claims against the plaintiffs' assignor, the Transcript Association. (Code of Procedure (old), § 112; *Wood* v. *Mayor*, 73 N. Y. 556.) The present plaintiffs must be treated in all respects exactly as the Transcript Association itself. (*Myers* v. *Davis*, 22 N. Y. 489–490; *Martin* v. *Kunzmuller*, 37 id. 396–399.) The claims for and against the city

and county of New York, respectively, vested and accrued in and against the defendant at a date prior to the beginning of this action. (Consolidation Act, Laws 1874, chap. 304.) The defendant was entitled to set off its claim for these moneys illegally paid, against the causes of action stated in the complaint, when sued by either the Transcript Association or its assignee. (2 R. S., § 18, p. 364.) The demands upon which plaintiffs sue might have been enforced by action, at the pleasure of the Transcript Association, as fast as they accrued. (1 Laws 1870, chap. 382, § 2, p. 878; 2 id. 1871, chap. 583, § 5, p. 1270.) The county claims now sued on could have been the subject of set-off in any suit brought by the county against the Transcript Association. (*People* v. *Canal Comm'rs*, 5 Denio, 401–404; Waterman on Set-off, §§ 34, 35, 36.) The fact that no action could be maintained against the city or county until after the claim was presented, did not deprive the claim of the capacity of being a subject of set-off. (*Patterson* v. *Patterson*, 59 N. Y. 574–579; *Jordan* v. *Nat. Shoe and Leather Bank*, 74 id. 467–474; 2 R. S. 355, § 24; *Lyle* v. *Murray*, 4 Sandf. Sup. Ct. 590–594; *White* v. *Southland*, 2 Alb. L. J. 48, 50, 51; *Palmer* v. *Palmer*, 30 Mich. 487; *Brust* v. *Barrett*, 16 Hun, 407; Code of Civil Procedure, § 410; *Burgess* v. *Tucker*, 5 Johns. 105.) In equity a debt already due to the defendant may be set off against the assignee of a demand against the defendant not fully due at the time of assignment. (*Lindsay* v. *Jackson*, 2 Paige, 581; *Bradley* v. *Angel*, 3 N. Y. 475; *Smith* v. *Felton*, 43 id. 419; *Davidson* v. *Alfaro*, 16 Hun, 353.)

FOLGER, Ch. J. This is an action to recover for services rendered and materials furnished. They were rendered and furnished by the Transcript Association; some part thereof for the county of New York, and some part thereof for the city of New York. Wherever the original liability to pay therefor, it now rests entirely upon the city, by reason of the act of legislature consolidating the government of the county and city of New York. (Laws of 1874, chap. 304, p. 360, § 2.) The debt or

demand was assigned by that association to the plaintiffs in this action. But before that assignment the county had a debt or demand, and the city had a debt or demand, against that association; both of which, by virtue of the act just cited, now belong to the city. (§ 1.) The city seeks to set off these against the debts sued upon by the plaintiffs; and the main question raised in the case is, whether this can be done under the statute of set-offs? It is not claimed by the plaintiffs that there is that in the nature or condition of these demands of the city which will shut it out from the benefit of the statute. The plaintiffs rely entirely upon the letter of the fifth subdivision of the eighteenth section, which is, that a set-off can be allowed only in actions founded upon demands which could themselves be the subject of set-off according to law (2 R. S. p. 354, § 18, sub. 5), and they say that the letter of this subdivision applies, for that the debts upon which this action is founded could not, before the assignment of them by the association to the plaintiffs, have been set off against the demands now held by the city and sought to be set off by it. They rest this contention upon the assertion, that at no time before the assignment to the plaintiffs of the debts upon which this action is founded could the association have brought and maintained an action against the county on that part owing by it, or against the city upon that part owing by it. They also state it in this wise: that the association did not then have a cause of action, or a right of action against either the county or the city. Though once said, it may well be repeated, that this assertion has no basis in the nature or condition of the debts themselves. It rests entirely upon the situation, as that of debtors at that time not liable to action, of the county and of the city; in which situation they were placed by the effect of certain statutes of the State. Those statutes are different, as to the city, from that as to the county.

We will first state those as to the city. It is first contended that the city could not have been sued for the debt owing from the county, until the act of 1874 above cited; and the assignment to the plaintiffs was in 1872; and thus, it is said, the

county claim now owned by the plaintiffs could not have been set off by their assignor, in an action against it then brought by the city. It is true that upon the county debt there was no right to sue, nor any cause of action against the city, until that act, which was passed after the assignment to the plaintiffs. We do not think that that fact now affects the question before us. When the city became liable for the debt originally existing against the county, it became liable therefor in the condition in which the debt then was; and if it was then a claim on which the right of action had before that accrued against the county, or if it was then a claim which could have been set off against a demand sought to be enforced by the county, all the advantage or disadvantage to the holder of the claim flowing from those facts adhered to him and to it, and went with it into the hands of the assignees. The change of liability from county to city was but a political change in the entity of the artificial debtor. By force of the act of 1874, the city was made to be the same as the county had been, and having all the liabilities of the county put upon it, it had also all its rights and defenses in regard thereto, given to it. The cause of action, if it had accrued against the county, was not abolished; it was made enforceable on a different object. And so, if the right of set-off existed when the debt was a charge against the county, that right was not affected by the statute.

The other statute as to the city is of more effect. Chapter 383 of Laws of 1870, pages 896–8, section 17, declares, that no action shall be maintained against the city unless the claim on which it is brought has been presented to the comptroller, and he has neglected for thirty days thereafter to pay the same. The debt against the city now sued upon by the plaintiffs was not thus presented before the assignment of it by the association. The association could not have maintained an action upon it. The contention of the plaintiffs is, that because the association could not have maintained an action against the city on this debt, it therefore had no cause of action or right of action against the city; and having no cause or right of action on the debt, the debt was not in a condition to be the

subject of a set-off. The rule has been stated in general terms, that to compel a set-off of two demands, there must be a mutual right of action upon them at the same time. In *Myers* v. *Davis* (22 N. Y. 489), it was said by DENIO, J.: "The rule is, that when such claims exist in perfect condition at the same time, either party may insist upon a set-off." The learned judge has been understood to mean by the phrase "perfect condition," that state of a demand when it is of right demand-able by its terms and conditions, and may be sued upon. In *Patterson* v. *Patterson* (59 N. Y. 574), it is said that mutual debts in the purview of the statute of set-off are not merely those that are owing, but those that are due and payable also, on each of which the cause of action has accrued and exists at the same time; and that the cause of action implies the right to bring an action, and prosecute it with effect. It is not always well to take particular phrases and sentences from an opinion and read them as giving the core of the judgment. Thus, in 22 N. Y., *supra*, it is plain that what was meant was, that the two demands were to have become mutual, by each having become due and payable; by which latter word is meant that there is nothing in the terms or conditions of the debt that calls upon the owner to wait longer before demanding payment and taking the steps needful to enforce it. So in 59 N. Y., *supra*, the current of the opinion runs to this: that to compel a set-off, both debts must have been due and payable at the same time, and before a change in the ownership of either. It is there said of the phrases, "cause of action has accrued," and "cause of action has arisen," that they do not mean the contracting of the indebtedness, for a cause of action does not accrue or arise from the making of the contract of indebted-ness, but from the non-performance of it as well. In *Jordan* v. *Nat. Bank* (74 N. Y. 467), commenting on 59 N. Y., *supra*, this court said: "It was shown there that the rule was estab-lished in England that none but mutual debts could be set off against each other, and that by mutual debts was meant those which were on each side at the same time due and payable; it was deduced from the weight of authority in this State, that

the same rule existed here." So in *McDowell* v. *Tate* (1 Dev. 249), it is said that a set-off is a mutual independent claim, which still continues to exist as such, and one that the parties did not intend should be appropriated to the satisfaction of an existing demand, but that each should have mutual causes of action, and, of course, mutual actions, if they pleased, against each other. So in *Francis* v. *Dodsworth* (4 C. B. 202, 220), WILDE, Ch. J., said : " The judicial construction  *  *  * has been that no debts can be used by way of set-off except such as are recoverable by action  *  *  *  ." Yet an English court, to which that remark was afterward cited, held that a debt might be set off, though because of an especial statute an action could not then be maintained upon it. (*Brown* v. *Tibbits*, 11 C. B. [N. S.] 855.) The phrases " cause of action " and "right of action " are used, because ordinarily, and in the absence of some especial circumstance, when a debt is mature it may be demanded and sued upon, and payment of right and by its terms be then exacted ; because, in general, the phrases " to be mature " and "to be suable " both express the same fact as to the debt. It is the condition or state of the demand at the time that is looked at. ( *Wells* v. *Stewart*, 3 Barb. 40, quoted from and approved in *Martin* v. *Kunzmuller*, 37 N. Y. 396–8, 401.) It is significant that the revisers in their note (5 Edm. Stat. 454) to sub. 5, *supra*, cite 6 Cowen, 615, and cases there collected (5 Johns. 105 ; 3 id. 150). The cases thus referred to deal with a set-off as allowable or not, according to the nature or state of the demand, and not as to any especial rule or regulation touching the situation of the debtor or creditor. There is a cause of action, and there is a remedy by action. They are different rights. (See Pomeroy on Remedies, etc., § 452, *et seq*.) Courts may well, when speaking of a case where there is no peculiar circumstance affecting the remedy, say that the existence of a cause of action is needful to enable a set-off to be asked for as a right. A rule of law, or a statute, may affect the remedy without affecting the cause of action. The operation of the statute of limitations affects the cause of action ; it raises the presumption that it is extinguished. The rule that

one under disability may not bring an action affects his remedy, but does not touch the cause of action. Suppose that an infant held the promissory note of a tailor, and that it was past due and payable. He would have a cause of action thereon. He could not maintain an action upon it. His remedy by action would be suspended until he had procured the appointment of a *prochein ami*. Though he had good cause of action, should he come into court with it without such next friend, he would be worsted. By a rule especial to a case like his, there is a prerequisite to his maintaining an action, a prerequisite not found in the terms or conditions of the note out of which his cause of action grew, not attaching to the debt as a debt, but to it as held by him. Yet if the tailor had at the same time an account for necessary clothing furnished to the infant, then due and payable, and should thereafter assign it, is it to be doubted that in an action by the assignee against the infant thereon, the latter could set off the note? The principle in *Whitemarsh* v. *Hall* (3 Den. 375) does not conflict with this idea. So it must be when it is a statute that suspends the remedy by action, but does not touch the cause of action. It might be a fatal objection to maintaining an action to enforce as plaintiff the cause of action, but it would not affect the right to set off the debt as defendant at the action of another. And in the case in hand, this seems to be a good reason why; which we now state. At common law there would be a good right to bring and maintain an action on the debt, without a prior presentment and a waiting of thirty days for payment, there having been before the statute the same instant remedy against the city as against any other debtor. Then the statute, which compels a presentment and a waiting, is an abridgment of a common-law right. A statute which abridges a common-law right is to be construed strictly, and may not be taken to include that which is not within its terms. Now this statute does not in terms include the case of a set-off. It says only that no action shall be maintained. Though a set-off is in the nature of a cross-action, in the place and stead of a cross-action, it is not an action. Indeed, the statute of set-off was enacted

to prevent the necessity of cross-actions. (Broom's Leg. Max. *336.) The analogy is often made of a set-off and an action, but it does not exist for all purposes. (Per WILDE, Ch. J., *Francis* v. *Dodsworth, supra.*) The statute, speaking only of an action and to be construed rigidly, may not be extended to a set-off. Hence a set-off of a debt which has not been presented in the way laid down by the statute is not forbidden by the statute, though an action upon the debt is. Thus, by statute law in England (2 Geo. 2, chap. 23, § 23; 30 id., chap. 19, § 75; 6 and 7 Vict., chap. 73), an attorney could not commence or maintain an action against his client for costs until a month had elapsed after the delivery of a bill thereof to the client. Yet it was held in an action by one against an attorney that though there had been no delivery of a bill by him, the latter might set off his costs. (*Martin* v. *Winder*, Doug. 199, note 63; *Bulman* v. *Birkett,* 1 Esp. Cas. 449; *Brown* v. *Tibbetts, supra.*) In such cases the rule is special, operating on the remedy and suspending it (see per BYLES, J., in case last cited, *861), but not affecting the cause of action. The debt has accrued due and payable; it is the duty of the debtor to pay; it is the right of the creditor to have payment; there is a cause of action, for a right and a duty have been violated; but the creditor may not sue, may not as plaintiff seek his remedy until he has kept the statute. (See per PARKE, B., *Lester* v. *Lazarus*, 2 Cr., M. & Rosc. 665.) The requirement of the statute does not go to the nature or condition or merits of the debt. The right to sue is not taken away, as it is by a statute of limitations. It exists, but the remedy by initiatory action in the courts is suspended. Yet when the debtor comes into court and brings his creditor there, and the jurisdiction and power of the tribunal are invoked, as there is no inhibition in terms in the statute against the debt of the defendant being applied upon that of the plaintiff, the court will and must see that each has the right and remedy that the law of the land has provided for him. Doubtless the purpose of the English statute as to attorneys above referred to was to prevent the hasty bringing of actions by them without fore-

warning. Just the same is the purpose of the New York city statute. In a municipality so great, so large in its dealings with individuals whereby debts may be made, it is not to be looked for that the auditing and disbursing officers of it will have knowledge of all its liabilities. It is prudent that there be a law that will hold back haste in suing it, and give time to know that a claim is made, to learn the merits of it, and to make ready to pay it. But it would be against the theory and life of a statute of set-off, that when the city has a claim against an individual, and he one against it, both mutually due and payable, that each may not be looked into, one applied to lessen the other, and the sum left unpaid of the largest be all that is to be enforced by legal process. The theory of the statute is to bring about the liquidation of mutual debts, and to find the balance between them in one proceeding. (See *Downer* v. *Eggleston*, 15 Wend. 51, per WALWORTH, Ch., 56.) It is too severe to hold, that because of a statute made for a particular purpose there is technically no right to maintain an action on one of such debts, no right to at once seek a remedy on it in the courts, that when the other is claimed the former should not be applied to the satisfaction of it. Of mutual debts both due and payable we speak; not of mutual credits, nor of a debt and credit. These are for the consideration of equity.

We are, therefore, of the opinion that if the city had sued the association before the assignment to the plaintiffs, the association might have set off against the city the claim now held by the plaintiffs against it. It follows that the city may now set off against the plaintiffs.

The other debt sued upon was against the county of New York. The position as to which is, that it cannot be set off against, inasmuch as it could not itself have been set off before the assignment, and that it could not then have been set off, because an action could not have been maintained upon it against the county. And for this reason: it was a county charge; it was a contingent expense of the county. (1 R. S. 385, 386, § 3, subd. 15.) The Revised Statutes (1 R. S. 366, 367, § 4, subd. 2) have provided for the board of supervisors

of each county to be a tribunal in whom is the exclusive and final power of passing upon and determining charges against the county. By reason of this statute, " county charges," so called, are not the subject of an action at law against the county. (*Brady* v. *Supervisors*, 2 Sandf. 460; affirmed, 10 N. Y. 260; *The People ex rel.* v. *Supervisors*, 45 id. 199.)

The defendant claims that by a statute since the Revised Statutes, the county of New York might have been sued on a county charge. The act of 1870 (Laws of that year, chap. 382, pp. 875–8, § 2) declares that no action shall be maintained against the county of New York, unless the claims on which the action is brought shall have been presented to the board of supervisors thereof and passed upon by them, or they have unreasonably refused or omitted to take action on the same. We think that this statute does not alter the law as to county charges, so called. Doubtless, the force of such phraseology in a statute, as that found in that section, led in by the word " unless," is that of an affirmative enactment (see *Manning, etc.*, v. *Keenan*, 73 N. Y. 45, 56, 57); and ordinarily the words would be interpreted as giving a right to sue, and the language is broad enough to include a claim of any kind. But the intent of the legislature is to be sought for and is to govern. It is plain from the whole act, and the surrounding circumstances, that the legislative purpose was to save the county of New York from actions brought hastily and without advice to the auditing board of the county, in cases where there then existed, in the nature of the claim against it, the right to maintain a suit upon it. It was not the purpose to lay the county open to suits for claims upon which no action could then be brought. We cannot assume that the legislature was ignorant that the law already protected the county from suit at all on county charges. We will not then deduce from the language of the section which appears to have another definite purpose, that the legislature meant to take away the complete safeguard which the county already had in that respect. Rather, we must say, that it meant to furnish another. And as there were claims other than county charges, to suit on which the county

was liable (1 R. S. 384; 1 Sandf., *supra*), the better interpretation of the section is, that the purpose was to debar suits on them until they had been presented and passed upon or neglected. This is a radical reason against the applicability of the statute of 1870, as allowing an action to be maintained on the claim against the county. Besides that, it does not appear from the case that the claim of the association against the county was, at any time before the assignment of it to the plaintiffs, presented and passed upon, or action refused or omitted.

The point of the plaintiffs is still to be met, that while this claim was in the hands of the association, an action could not have been maintained upon it, and that therefore it cannot now be set off. It has often been said that a set-off is in the nature of a cross action (*The State* v. *B. & O. R. R. Co.*, 34 Md. 374; *Jeff. Co. Bank* v. *Chapman*, 19 Johns. 322; *Carpenter* v. *Butterfield*, 3 Johns. Cas. 144); that there must be a subsisting debt upon which an independent action might be maintained. (34 Md., *supra ; White* v. *The Governor, etc.*, 18 Ala. 769; *State* v.            , 1 Hayw. 223; *Pate* v. *Gray*, 1 Hempst. 155; *Varney* v. *Brewster*, 14 N. H. 54.) The facts of these cases show that some of them went upon the ground that the demand sought to be set off was not due and payable, so that a cause of action arose in time to have maintained an action upon it; some of them on the ground that the nature of the demand did not bring it within the law of set-off; some of them upon the ground, that as a State cannot be sued by a creditor for his debt, no more can his debt be made the subject of a set-off, inasmuch as one as well as the other is prevented by the same principle. In the case in hand, the debt sued upon and that sought to be set off were, while the former was owned by the association, mutual demands, both due and payable, upon both of which the right to have payment, and the duty to pay had become fixed, and both of which were in their nature within the law of set-off.

The reason given why a set-off can no more be allowed against a State, when it has initiated an action, than can an independent

action against it be upheld, is this, that in each case it is equally an attempt to coerce the sovereign, and that the prin. ciples of the common law do not permit that a sovereign State be subjected to coercion by its own tribunals, they having no power to prescribe a course of conduct to the sovereign. (*State* v.          , 1 Hayw., *supra;* 34 Md., *supra.*) We will not now determine whether this rule should have weight when the State has come into its courts, has initiated judicial action by bringing suit there, and has thus called upon its tribunals to exercise their powers and to do justice between it and a citizen. (See per MARSHALL, C. J., *U. S.* v. *Mann*, 2 Brock. 9.) It is enough now to say that, in our judgment, the principle does not apply to a political division of the State, as a county is. It is not inherent in the nature or the authority of a county that it cannot be sued and be subjected to judicial process. It is the subject of legislation and of the coercion of law, as well as a natural person or a corporate body. The State, the whole people, is the fountain of justice. Writs issue in the name of the people. The State cannot command itself by its own writ to appear *coram judice.* (Broom's Leg. Max. *50.) It is otherwise with a county. It has no prerogative of a sovereign. The Revised Statutes, that exempt it from action on county charges, recognize its liability to action on other claims (1 R. S. 384, § 1.) It is not wholly free from action. It is not altogether exempt from judicial coercion, obtained in an action brought against it. Besides being subject to such coercion, it is liable to it also in the very matter of county charges, although upon them it may not be pursued by action, strictly so called. It is not seldom that counties are gone against by *mandamus, certiorari,* injunction and like writs ; and sometimes where the basis of the judicial proceeding is a claim like these of the plaintiffs, that is, a county charge. If a board of supervisors, the representative in law of the county (1 R. S. 384, § 2), and the tribunal formed by law for the adjudication of these claims, refuses to hear and determine them, or if hearing, rejects a legal claim, the courts have power to compel by *mandamus.* (*The People ex rel.* v. *Supervisors*, 45 N. Y.; *supra.*) And a

*mandamus* proceeding is a suit, within the meaning of the United States Constitution; for it is a litigation of a right in a court of justice, seeking a decision. (*Weston* v. *City of Charleston*, 2 Peters, 449; *Holmes* v. *Jennison*, 14 id. 564.) It is plain that the rule, that the sovereign power is out of the coercion of the courts does not apply to a county; and hence it is plain, that when a county seeks the aid of the courts, it must do what the courts adjudge against it. If it seeks to recover a debt by judicial process, the tribunal may decree that it allow upon the debt, as a set-off, a demand against it which the creditor might not maintain an action upon by reason of the special statute in its favor. Moreover, there applies here what we have said in considering the case of the city debt. There would have been, but for the Revised Statutes, a common-law right to maintain an action against the county on the demand assigned by the association. That statute shuts off the common-law right to bring the county into court; but it does not, when the county has brought its debtor into court, by its terms, shut off his right to set off against the claim of it on him, his claim on it. If the county had sued the association before the assignment to the plaintiffs, as the county might have done, the association, having cause of action against the county in a demand due and payable and unpaid, might have set it off against the demand of the county. We do not see why the county, having come into court and set in motion judicial action, would not have been lawfully subject to all the incidents and results of the proceedings it had started, the same as a natural person would have been. Then the mutual demands would have been laid to each other, and only the difference between them have been the amount to be collected from one or the other party.

It does appear that the claims of the plaintiffs might, in the hands of their assignor, have been the subject of set-off against the claims of the defendant now set up by it. The latter are a good set-off now against the former.

The plaintiffs raise another question: That there is no proof that the claims sought to be set off ever existed against their

assignor. It is conceded that by culpable negligence, or criminal connivance, on the part of the officials acting for the county and for the city, large overpayments were wrongfully made to the officers of the association from the municipal treasuries. It is contended, however, that it does not appear that the association profited thereby. These overpayments were not a separate doing from the rightful payment for work done, and for which there was lawful claim. All were made at the same time, and as a single satisfaction of a whole claim or set of claims. They were made to the duly constituted and recognized officers of the association, authorized to demand and receive payment for it, after action brought in its name and by its attorney, on bills presented in its behalf, and after formal adjustment and liquidation with those officers, by the municipal officials, of the claims presented; the formal receipt or release of the association was given and taken from all demands, and the actions discontinued, and in consideration of the sums thus paid as a whole. The payments were made in warrants to the order of the association, which were indorsed officially by its authorized officer; he officially received the money on them; and all these things he did, as he did the like in the ordinary course of the business of the association. The whole sum thus paid, without distinction in time or amount between what had been justly earned by the association and what had not, was *prima facie* due to it; that is, it could, and by its officer did show the matter produced by it for the municipalities, in such form as would reach in value, if charged for and paid for in that form, the amount claimed. The wrong done the municipalities was not in the matter produced, but in the form in which it was put; and the overpayment was the sum which was paid for the matter in that form, more than would have been demandable for the same matter in the form agreed for. It is seen then that the officer of the association, in receiving payment in name of his office, and by reason of his office, did act for the association, in that it was entitled to some part of what he received, and in that that all which he received was *prima facie* due to it. In the absence of any proof or allegation that

he was false to his principal as well as to its debtors, the receipts and releases made by him officially, and his other official doings in the business give legal presumption that the moneys named in those papers went to the benefit of the association. (*Booth* v. *F. & M. Bank,* 50 N. Y. 396.)

The judgment should be affirmed.

All concur.

Judgment affirmed.