## COLUMBIAN BUILDING & LOAN CO v BURKE et

Common Pleas Court, Franklin Co

No 134348. Decided August 10, 1932

James M. Butler, Columbus, for plaintiff. Luther L. Boger, Columbus, and J. Maxwell Maher, for defendant.

LEACH, J.

It may be here noted that §9468, **GC**, authorizes building and loan associations organized under the laws of Ohio "to receive money on deposits," and §9652, **GC**, authorizes such associations.

"to permit withdrawal of deposits upon such terms and conditions as the association provides except by check or draft. But no

such association shall be permitted to carry for any member or depositor any demand, commercial or checking account. Nothing in this chapter shall prevent members or depositors from withdrawing funds by non-negotiable orders."

The one question raised by the demurrer is whether or not the answer has pleaded facts sufficient to warrant a set-off of the amount of the certificates of deposit, or any of them, against the mortgage indebtedness.

**The General Code, §11319, provides:**
"A set-off is a cause of action existing in favor of a defendant against a plaintiff between whom a several judgment might be had in the action and arising on contract or ascertained by the decision of a court. It can be pleaded only in an action founded on contract."

**Sec 11315, GC, provides:**
"The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off as he may have, whether such as heretofore have been dominated legal or equitable, or both. * * *."

**Sec 11320 GC provides:**
"When it appears that a new party is necessary to a final decision on a set-off, the court shall permit the new party to be made by a summons to answer the set-off, if, owing to the insolvency or non-residence of the plaintiff, or other cause, the defendant will be in danger of losing his claim, unless permitted to use it as a set-off."

Generally speaking there are two classes of set-offs, the first of which is usually denominated as a "legal set-off" and the second, which is usually denominated as "equitable set-off," and two of the most common grounds of equitable set-off are those mentioned in §11320 GC, viz, insolvency and non-residence of the plaintiff. These grounds of set-off, viz. legal and equitable, will be separately discussed.

**First, as to legal set-off.**
"The rule is well settled in a majority of jurisdictions, under the statutes there in force, that a claim, in order to be available as a set-off, must be a demand in favor of the defendant upon which he might have maintained an independent action against the plaintiff at the time of the commencement of the action in which he seeks to interpose it as a set-off; in other words, the general statutes of set-off and counter-claim apply to mutual debts only and do not comprehend mutual credits. * * * And to allow a debt not due to be set off against

one already due would be to change the contract and advance the time of payment. Mutual debts, in the purview of a statute of set-off, are not merely those which are owing, but those which are due and payable, on each of which the cause of action has accrued and exists at the same time, while they are mutual credits if either remains to be paid at a future day." 24 R.C.L., 838-839.

"A demand of defendant against plaintiff, not due at the commencement of the action, cannot be set-off, * * *." 57 Corpus Juris, p. 395.

Under the facts stated, has the defendant a present right of action against the plaintiff on these certificates of deposit?

It will be noted from the form of the certificates of deposit that they do not call for the repayment of the deposit on demand or at any particular or specific time. In fact the statute, §9652, GC, above quoted, prohibits such associations from carrying for any depositor any demand, commercial or checking account. And said section further provides that the association shall have power "to permit withdrawal of deposits upon such terms and conditions as the association provides except by check or draft."

The deposits so made are clearly to be distinguished from deposits in a commercial bank where "the law implies an agreement on the part of bank receiving a deposit to account to the depositor for the amount thereof, to repay him on demand and to honor checks drawn against the account from time to time by the depositor to the extent of the amount thereof." 5 **Ohio Jur. Prud. 400.**

The Statute, as heretofore noted, permits withdrawals "upon such terms and conditions as the association provides." And the association has adopted rules and regulations relative to withdrawal, which rules are set forth in the answer and which in substance are made a part of the certificates of deposit themselves. The conditions of the deposit when made are those authorized or provided by the Statute, those which are adopted as a part of the constitution and by-laws of the association and those which are printed upon the certificates of deposit. These together when such deposit is made and such certificate issued constitute a contract between the depositor and the association, the legal effect of which is on the part of the association that it promises, in consideration of the receipt of the money, to repay the amount so received, as a general rule "at any time without previous notice but to protect the interests of members, depositors and borrowers and avoid sacrifice, notice of withdrawal may at any time be

required." · And the general withdrawal rule further provides that:

"the required notices to withdraw shall be filed in the order in which they are received and paid from' the regular receipts of the company in the order in which they are filed as fast as fifty per cent of the regular receipts of the company will pay them, after deducting from the said receipts an amount sufficient to meet all current operating expenses, all interest charges, dividends, expenses, and other obligations of the Company,"

The answer having alleged that the company has gone upon notice the legal effect of the promise is that the association will pay out of a fund constituting one-half of the receipts of the company over and above certain expenses and in the order of presentation of the notices of withdrawal. By virtue of this contract relationship existing between the association and its depositors said relationship must be characterized in either one of two ways. Either they are participants or joint enterprisers in the conduct of the business or they are simple depositors or creditors of the association, the time of repayment being flexible and contingent as stipulated in the rules and regulations of the associations. If they fall within the first classification their status would be analogous to that of stockholders without voting privileges or without the right to participate in the management of the corporation. If the latter, their relationship would be substantially similar to that of a depositor in a commercial bank, except that such deposits are not payable on demand nor may such deposits be withdrawn by check or draft. A depositor is entitled to interest. A stockholder or subscriber is entitled to dividends if such there be. A depositor is under no liability to the corporation or its creditors. They cannot participate in the management of the corporation. The stockholder would be subject to the double liability created by **Article XIII, §3 of the Constitution of Ohio,** and would be subject to share the losses of the association. Certainly it would not appear that there is anything in the relationship as shown by the Constitution and by-laws of the association under which it may be said that the depositor may either participate in the management or be required to share the losses of such a company except in the loss he may suffer by reason of the association not being able to repay in full.

The syllabus in the case of Ashbrook v North Fairmont Building & Savings Co., 8 N.P. 246, is as follows:

"A depositor of a building association, who is not a stock member thereof, is a creditor of the association."

In the case of **Bayless v Baird, 110 Oh St 305,** the court in denying the right of set-off to a stockholder of an insolvent building and loan association, say, (p. 309):

"That view would also result in preferring the stockholder over creditors of the association from whom money had been borrowed and also over those who were **depositors.**"

The relationship of such certificate holders to the association must be measured by the contracts into which they have entered with the association, and under these rules and regulations their claims under such contracts have not matured, and will not mature under the language of the regulations until the fund to be used to pay them is in existence and available to pay them in their proper order of priority. If such depositors were to be considered as partners or joint enterprisers or in some relation substantially similar to that of a non-management participating stockholder, then the case of North Fairmount Building & Savings Co., 5 N.P., 133, would be of some interest.

"The constitution of a building association provided that withdrawal claims could only be paid in the order in which they had been filed. B., a mortgagor, having purchased from a non-borrowing member his withdrawal claim which was not yet payable, tendered the same in payment of his mortgage which was due and payable, but the association refused to cancel the mortgage. Held—That the action of association should be sustained." Opinion: "The plaintiff is not entitled to the relief prayed for. To allow her to pay off her mortgage with the withdrawal claim of Klinke before it is payable is, in effect, to give the Klinke claim priority over those whose applications for withdrawal had been filed before that of Klinke; because the mortgage could not be paid off except by cash and to allow it to be paid off by the Klinke claim is to treat the claim as cash, in other words, to pay the Klinke claim before the applications which were prior to it have been paid. What is expressly forbidden by the constitution can not be done by indirection, for in either event the result is a preference in time of payment which the constitution seeks to prevent."

As to stock depositors, that is, those who take out a certain amount of stock and

make installment payments thereon, 9 Corpus Juris, at page 939, says:

"It is often provided by statute and by-laws that only a certain portion of the funds in the treasury shall be used to pay off withdrawing members; and the effect of such provision on the rights and remedies of such member has given rise to controversy. One view is that, the time for withdrawal having arrived, the membership is at an end, and the amount allowed on withdrawal is due, and that judgment may be recovered by suit, although execution will be stayed until the required funds are in hand. **The weight of authority,** however, is to the effect that the existence of funds is a condition precedent to the right to recover the amount allowed on withdrawal, and must be shown by plaintiff as a part of his case."

Illustration of the first rule is found in U. S. Building, etc., Assn. v Silverman, 85 Pa. 394:

"A member who has perfected his right to withdraw by complying in all respects with the requirements of the governing statute is not estopped, by a provision that at no time shall more than one-half the funds in the treasury be applied to the demands of withdrawing stockholders, from bringing suit for the recovery of the amount due until the treasury has funds sufficient to meet his claim. To hold otherwise, it was said, would enable the association to defraud the members of all benefit from his right of withdrawal by keeping itself in a state of quasi insolvency. The proviso merely intended that the operations of the society should not be embarrassed by having the whole amount of its cash assets taken in order at once to pay the withdrawing stockholders; and this object is amply served by enabling the court to restrain plaintiff's execution, so as to give the building association a reasonable time within which to raise the money without undue derangement of its affairs."

Illustrative of the rule which Corpus Juris states to be in accordance with the weight of authority:

"It was provided in the by-laws of a building and loan association that 'at no time shall more than one-half of the funds (in hand) be applicable to the demands of withdrawing stockholders without the recorded consent of the directors.' The general law of the state provided that 'not more than one-half of the amount received in payment on stock in any one month shall be used to pay withdrawals without the con-

sent of the board of directors.' The court held that, in view of the above provisions, a withdrawing member could not take judgment against the association until the required amount of money was in the treasury, and in so holding said: 'In assuming the relation of a member of the association plaintiff contracted with reference to and was to be governed by its by-laws insofar as they were reasonable, and not opposed to our statutory provisions regulating associations of this character. He agreed to abide by the condition of the treasury in case of a withdrawal, and to take his money when funds properly applicable for the purpose were on hand. He was not to be paid until these funds were in the treasury, and, although he could at any time cease to be a member, and terminate his obligation to make monthly payments, the amount to be returned to him did not then become due or payable except in certain contingency.' Heinbokel v National Sav. Assn. 58 Minn. 340. Similarly, a rule providing for the payment of withdrawals in rotation, in case of insufficiency of funds, has been held to suspend the right of suit until the member's turn has arrived. If an action is brought, the lack of available funds, if alleged, constitutes a sufficient answer."

Brett v Monarch Inv. Bldg. Sec., 1 Q. B. 367.

In Ohio the case of Ward v North Fairmount Sav. Co., supra, and such other authority as may be found would seem to indicate that Ohio is in accordance with the general rule. The discussion just preceding, of course, has to do with withdrawal rights of a stock depositor as distinguished from a certificate depositor, and is only indulged in to show that there would be no present right of action existing in favor of the certificate holder even if the relationship between the association and the depositor was held to be that in the nature of a stockholder. But as heretofore indicated, the court does not believe that such is the legal relationship existing between the parties; that rather it is that of a contract relationship whereby the depositor is a creditor with right to repayment in accordance with the terms of the certificate and the by-laws. By reason of the relationship thus found to exist between the depositor and the association and by reason of the terms of the contract existing between them as defined by the constitution and the by-laws of the association, it must be concluded that the deposit claims are immature, that is, that the deposits are not now due and payable. Were it not for this fact there would undoubtedly exist a right to a legal set-off by a depositor against his mortgage note,

It is argued that the statute in speaking of "a cause of action existing in favor of a defendant," though admittedly limited to matured claims, does not exclude the allowance of the set-off in the case under consideration simply because no notice of withdrawal may have been filed by the debtor depositor. There is, of course, a rule which distinguishes between a cause of action and an immediate right to a remedy. Numerous cases are cited in support of this principle, among them Taylor v Mayer, 82 N. Y. 10; Brown v Tibbits, 142 Eng. Reports Reprint, 1030; Clark v Story, 29 Barb..295; Cornell v Donavan, 14 Daly, 295, as well as other cases.

In Cornell v Donavan, supra,
"The court cites and follows Taylor v Mayer, 82 N. Y., 10, as holding 'that a claim might be a valid set-off, though, for some reason no action upon it could at the time be maintained. A distinction was drawn between the cause of action and the remedy by action, and it was· held that though the remedy might temporarily be suspended, so that no action could be maintained, if a good cause of action existed, it might be used as a set-off."

In the court's opinion, however, in all of those cases just mentioned, the impediment to an immediate remedy on the part of the person claiming the set-off was in the nature of a formal prerequisite to an action and did not affect the substance of the claim itself. Here we have to deal with the substance of the claim as well as the formal prerequisite to an action by way of demand. If only the lack of demand for payment of these certificates were present we would have a different situation presented, but here we have not only lack of demand but also the contract rights existing between the parties whereby the claim itself is not presently due.

The court reaches the conclusion that the set-off claimed by the defendant cannot be sustained as a legal set-off, for the reason that the depositor's claim does not constitute a "cause of action existing in favor of a defendant against a plaintiff between ·whom a several judgment might be had in the action."

### Equitable Set-Off.

It is unnecessary for the court to review the history, growth and development of what is known as equitable set-off, and it is sufficient to say that such set-off in proper cases does exist irrespective of the Statutes. In fact such set-offs are recognized by §11315 GC which provdies that

"The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off as he may have, whether such as heretofore have been denominated legal or equitable, or both."

It is said that
"Courts of equity interfere, in cases of set-off, on grounds analogous to those upon which their whole preventive jurisdiction is based, that is, to prevent irremediable injustice; and the criterion by which the allowance of set-off is to be determined is whether it is equitable. * * * But there will be a grant of the remedy only for the purpose of securing an equitable result, and not where its allowance would work an injustice to others having equal equities."
24 R.C.L., 804.

Commenting on the generally recognized grounds for equitable set-off, 57 Corpus Juris, p. 363, makes the following statement:

* * * "Insolvency and non-residence are grounds for equitable set-off, but they are not the sole grounds therefor; other grounds are stated generally to include such a connection between the demands that one is the consideration for the other, an agreement to set them off, and a complete liquidation thereof at law. Although it has been stated that there is a natural equity that cross demands should be offset against each other, and that the balance only should be recovered, an equitable right of set-off must be not only a natural equity, but such an equity as can be enforced by judicial action, and not arising merely from moral consideration; courts of equity will not enforce any vague equities of set-off which involve no rights or interests protected by the recognized rules of justice. There is no such thing as an inherent equitable right of set-off. Also, a mere right of set-off is not of itself an equity; it becomes one only in consequence of some additional circumstance. A set-off in equity is not authorized by the mere circumstance of mutual and independent cross demands, without circumstances from which it can be inferred that one debt should be deducted from, or set off against the other, or some other intervening equity which renders the interposition of a court of equity necessary for the protection of the demand sought to be set off."

In the following section, on page 364, Corpus Juris deals with mutual credit.

" 'Mutual credit', in the law of set-off, is a knowledge on both sides of an existing debt due to one party, and a credit by the other party founded on, and trusting to, such debt as a means of discharging it."

The next ground of equitable set-off mentioned in Corpus Juris on page 364 is "Insolvency."

"The insolvency of the party against whom a set-off is claimed may be a sufficient ground for the allowance of the set-off in equity. Although some early authorities inclined to the view that mere insolvency alone does not constitute a ground for the interference of the court, and that some further equity must exist in order to induce an equity court to act, other authorities take the position that insolvency is a distinct equitable ground of set-off and may of itself raise an equity which will justify the interference of the court. At any rate, insolvency is a material circumstance to be considered in determining whether an equitable set-off should be allowed, and, when coupled with other matters, may authorize the allowance of the set-off. While equity will not grant a set-off on the ground of insolvency where the allegation of insolvency is not sustained by proof, and it seems that in some early cases insolvency was the only ground of equitable set-off recognized, nevertheless an equitable set-off may be allowed on other grounds against a party who is solvent."

The next ground dealt with in Corpus Juris is that of the non-residence of the party against whom a set-off is claimed. Since the Columbian Building & Loan Association is not claimed in the pleading in express terms to be insolvent there would be no reason for further discussing insolvency as a ground of equitable set-off, except for the fact that part of the brief and the argument on behalf of the defendant urging the equitable set-off is based upon reasons assuming insolvency and upon cases cited where insolvency was present.

**Barbour v Bank, 50 Oh St, 90,** is one of the cases so cited. In that case the party against whom the set-off was claimed was insolvent and a receiver had been appointed for said party. The court stated on page 99:

"The insolvency of the party, against whom the set-off is claimed, is recognized in numerous authorities, as a sufficient ground for the exercise of the jurisdiction of a court of equity in allowing a set-off in cases not provided for by the statute, and that too although the demands on both sides are not liquidated by judgment or decree, so as to authorize a set-off upon a summary application by motion."

The court cited among other cases, Pond v Smith, 4 Conn., 302, where the Supreme Court held that:

"The insolvency of one of the parties was a sufficient ground for the interference of a court of chancery to offset mere legal demands against each other, although they were so situated as to be incapable of being set off at law; and that the complainant ought not to be left to pursue his legal remedy against the defendants, when, from their insolvency no satisfaction of his demand could be thus obtained."

Collins v Farquar, 4 Litt. 153, was also cited, this being a case where the Court of Appeals of Kentucky recognized the principle that the insolvency of the defendant will, in equity, give the court jurisdiction to decree a set-off of a demand against him, which might be recovered in an action at law, if he was solvent. White v Wiggins, 32 Ala. 424, and Field v Oliver, 43 Mo. 200, were cited to like effect. **Niles, Assignee v Olszak, 87 Oh St 229,** is another case cited by counsel for defendant. The first syllabus of that case is as follows:

"A stockholder in a savings and loan association organized under the laws of this state, is entitled, when the association becomes insolvent, to set off, as against its assignee for the benefit of creditors, a claim for money which he has on deposit with the association, against his liability for the unpaid part of his stock subscription."

It will be noted that the equitable ground, viz., insolvency, was there present. Niles v Olszak was distinguished in the case of **Crawford v McDonald, 124 Oh St 112,** in which case the set-off was allowed only to the extent of the credit which arose out of the same transaction as the adverse claim. The court said among other things that

"The right of set-off when asserted as against an insolvent person or corporation always involves a preference. The person receiving the set-off is credited with the full amount of his claim, while other creditors receive only their pro rata share of the assets of the insolvent. Whether a stockholder indebted to the corporation on his stock subscription should be entitled to receive such a preference by receiving a credit upon such subscription for the full amount of his claims against the company is the question presented by this case. By the decided weight of authority, a stockholder under such circumstances is not entitled to the right of set-off."

In **Andrews v State ex Blair, 124 Oh St, 348,** the case of Niles v Olszak is further distinguished if not overruled, and it was there held that,

"The liability of stockholders of an insolvent bank in process of liquidation creates a trust fund for the purpose of paying the debts of the corporation, to be paid prorata among creditors. The debt due to a stockholder is entitled to no preference over other debts, and payment can not be required as a set-off."

It is to be noticed that the case was dealing with the rights of a stockholder and not of a depositor. In this case the court said, in discussing the opinion rendered in the case of Niles v Olszak, that it

"goes far beyond the syllabus, and far beyond the range of the controversy itself, * * *. It would now seem, in view of the present controversy and the confusion caused by the Olszak case, that it would have been better to have declared that that case was pro tanto overruled."

The case of **Armstrong, Receiver v Warner, 49 Oh St, 376,** is also cited as an authority why a set-off should be permitted upon the pleadings in this case. It is to be noted, however, that the element of insolvency was present in the Armstrong case. This is shown by the first syllabus, where it was held:

"When the holder of a claim not yet due, arising upon contract, becomes insolvent and transfers the same before maturity, and the debtor, at the time of the transfer, holds a similar claim then due against the assignor, his right of set-off is preserved against the assignee, when the latter's cause of action arises."

The recent case of McDevitt et, Receivers of The Centerburg Building & Loan Company v Chapman, decided May 6, 1932, by the Common Pleas Court of Knox County and reported in the O. L. B. Rep. for June 20, 1932, is cited and relied upon by the defendant. But it is to be noted that there were present in that case two of the elements of equitable set-off which the quotation from 57 Corpus Juris, 363, recognized as such grounds: First, there was present such a connection between the demands that one was a consideration for the other; and, second, insolvency. It was held in that case that,

"A depositor in a building association, who has given a note to the association secured by his pass book evidencing a deposit in the association, is entitled in a subsequent action on the note by the receiver of the association to a set-off of his deposit against his indebtedness on the note."

The receivership evidenced the insolvency of the association and the court stated with reference to the transaction that,

"It was a simultaneous transaction wherein the defendant secured $700.00 by reason of having on deposit $700.00 which he was able to pledge as security."

In the case at bar there is no claim made in the pleading that the borrowing of the money for which the mortgage was given as security was founded upon or made in reliance upon a deposit simultaneously made or existing in the association, nor has insolvency been pleaded.

Not all of the cases which have been reviewed support the theory that an immature claim against an insolvent may be set off against the claim made by the insolvent. For cases taking this view, see note to Gersetta Corp. v Equitable Trust Co., 43 A.L.R. at page 1325. For cases supporting the view that immaturity of claim does not prevent set-off, see notes, same case, p. 1326; also see notes to Prudential Realty Co. v Allen, 25 A.L.R., pp. 938 and 946.

As affecting the right to set-off it is probable that there is no distinction between an adjudicated insolvent and insolvency in fact. See 9 C. J., p. 983, also In Re State Mut. Bldg., etc. Assn., 68 A. 108, 110, where the court said:

"I find no essential difference between a voluntary liquidation under the statute brought about by internal conditions which render the further transaction of business inconsistent with the best interests of shareholders and a liquidation by a receiver of this court brought about by a condition of adjudicated insolvency."

See also Grimm, Recr. v Savings Bk. Co., 25 N.P.N.S. p. 207, a Franklin County case where the court in the course of the opinion said:

"The fact of insolvency, and not of the adjudication thereof or the appointment of a receiver, is the basis of the right, when one of the claims is unmatured."

It would be unwise to leave this discussion without noting that there are certain qualifications to the right of equitable set-off based on insolvency, one of which is that,

"Claims acquired by defendant against plaintiff after commencement of the action

can not be interposed in an action by defendant as a set-off."

57 C. J., p. 511.

"Ownership at the time suit is brought is of the very essence of set-off, and a set-off or counter-claim must not only be in existence, but in existence in favor of the defendant interposing it, and at the time the action against him was commenced; he can not purchase it afterwards and then set it up."

24 R.C.L., 833.

Neither can

"a demand assigned conditionally for the purpose of being used by the assignee as a set-off, with an agreement that it be returned if not used, be used as a set-off or counter-claim to a valid claim against the assignee."

57 C. J., 508.

Nor can a

"defendant set off a claim assigned to him for the sole purpose of enabling him to collect it for the assignor."

57 C. J., 509.

There is still another qualific action to the right of set-off in cases of insolvency and that is that,

"Where the creditor is insolvent, defendant can not set off, in a subsequent action by the creditor's assignee in insolvency, a claim purchased by him against the creditor subsequent to the insolvency and after he has reasonable cause to believe that the obligor is insolvent."

57 C. J., 507.

Smith v Hill, 8 Gray (Mass.) 572; Northern Trust Co. v Healey, 61 Minn. 230; Smith v Brinkerhoff, 6 N. Y. 305; Waterman on set-off, §113, where it is stated: "But the defendant can not set off a debt of an insolvent which he has purchased with knowledge of the insolvency."

The same rule would probably apply as to the converse of the above proposition, that is, as to a depositor who at the time of acquiring knowledge of the insolvency of a building and loan association and faced the probability of loss of a part of his deposits, proceeds to acquire property encumbered by a mortgage to the same building and loan association and assumes and agreed to pay the debt due on the mortgage. In such case it would seem that the situation would be ruled by the same principles as just set forth. If a set-off were claimed on the ground of insolvency the question of knowl-edge or constructive knowledge of the assignee of such claim of the fact of such insolvency or the question of knowledge or constructive knowledge on the part of a purchaser of property mortgaged to the association would undoubtedly be questions of fact to be determined from the evidence in each particular case.

Is that part of §22 of the Columbian By-Laws which provides that "all stock and deposits shall be subject to a first lien thereon in favor of the company for any indebtedness of the members of the company" a basis for an equitable set-off? In the first place it is to be noticed that this claim of lien can only be asserted against "members of the company." While the pleading sets forth that the company does claim such lien, this is only in the nature of a legal conclusion since it is not pleaded that the defendant in this case is a stockholder and so a member of the company. Even if it were pleaded that the defendant as a depositor was also a stockholder and so a "member of the company" such relationship would not bring the situation thus existing within the rule of mutual credit as defined by 57 C. J. at page 364; that is, "an existing debt due to one party, and a credit by the other party founded on, and trusting to, such debt as a means of discharging it." No cases have been found which would sustain the right of set-off based on this claim of lien alone. Thus in Armstrong v Warner, supra,

"Equity will enforce the right of set-off by decreeing the compensation of mutual demands so far as they equal each other where they have grown out of the same or connected transactions or the one has formed in whole or in part the consideration of the other, and the party against whom the set-off is asserted is insolvent."

From a review of the authorities the court has reached the conclusion that such mere claim of lien, there existing no factor of the extension of credit by one party upon the faith of the credit of the other, that is to say, the deposit not having been made on faith of obtaining a loan, and the loan not having been extended on the faith of the existence of the deposit, that such connection as does exist by reason of said claim of lien is not in and of itself and standing alone a ground of equitable set-off. See also Felton v Bank, 6 N. P., 136.

It is contended generally on behalf of the allowance of either a legal or an equitable set-off, if either the one or the other is not permitted in the pleadings that the rules of the association which permit the association to take an indefinite time to make payment

of certificates of deposit are illegal and unconstitutional, that such rules would permit an unregulated board of directors to so manage the corporation that the stockholders would have the benefit of the use of the $1,500,000.00 of deposits for which demands have been made; that the benefit of the use of this money could be taken out of the pockets of the depositors and put into the pockets of the stockholders; that before making any payments to the stockholders the board of directors by virtue of By-Law Number 25 may first deduct an amount sufficient to meet all current operating expenses; second, interest charges; third, dividends; fourth, expenses; and fifth, other obligations of the company. The discussion of this subject would obviously be different in the case of a perfectly solvent corporation then it would be from one which is obviously insolvent. A solvent corporation contemplates a situation where depositors will be paid in full. The fact that such depositors can not obtain their money at once is beside the point for the reason that a building and loan association is in essence a financial institution which loans the money of depositors on mortgages; that is, the group known as depositors deposit their money with the association, and the association acting as their agent, makes the loans. If one single depositor, instead of making a deposit in such an association, should himself invest his money in a real estate mortgage, obviously he could not obtain the amount so loaned in cash on demand. It would have to await the payment of the note and mortgage in accordance with its terms. A like situation obtains in the case of a solvent building and loan association loaning the group money of the depositors to as many persons who secure the same by first mortgage. If all of the persons so depositing money asked for the same at one time it is obviously impossible and obviously inconsistent with the whole theory of such an institution that it may be paid at once upon demand. If upon the other hand, such an institution becomes insolvent the statutes of Ohio step in to prevent the payment of dividends to stockholders, because §8623-38 GC provides:

"No corporation shall pay dividends except from the surplus of the aggregate of its assets over the aggregate of its liabilities."

And §8623-124 GC provides a penalty for the violation of the law in this regard.

Furthermore, the state inspector of building and loan associations is charged with the duty of preventing violations of the law in the management of such an association. §686, GC providing,

"If upon examination, the inspector of building and loan associations finds any domestic association conducting its business in whole or in part contrary to law, or failing to comply therewith, he shall notify the board of directors of such association of such fact in writing. If, after thirty days, such illegal practice or failure continues, he shall communicate the facts to the attorney general, who shall cause proceedings to be instituted in the proper court to revoke the charter of such association."

And §687, GC, provides:

"If, upon examination, the inspector of building and loan associations finds that the affairs of a domestic building and loan association are in an unsound condition, and that the interests of the public demand its dissolution and winding up of its business, he shall so report to the attorney general, who shall institute the proper proceedings for that purpose."

In the case of State v Common Pleas Court of Franklin County, Ohio, 124 Oh St 269, which was the case where the Supreme Court allowed a writ of prohibition against a branch of the Court of Common Pleas of Franklin County from proceeding to hear an application for the appointment of a receiver for the Columbian Building & Loan Company on the application of a creditor on the ground that the application was made by a creditor rather than by the attorney general, it was indicated in the concluding paragraph of the opinion that a way was still open in case the state officials mentioned should not promptly, fully and faithfully perform their duties with respect to such institutions. The statutes and the Supreme Court having made provision therefore for such contingencies or possibilities as might arise and as are referred to in defendant's argument, the court is unable to find that the rules and regulations of the plaintiff company or the statutes upon which they are based are invalid or unconstitutional.

In closing, it may be well to state that this opinion in no way deals with the subject matter of the right of the board of directors of a solvent building and loan association voluntarily to permit the set-off of deposits against loans secured by mortgages, that question not being before the court. The demurrer to the answer will be sustained and exceptions noted. Leave to file an amended answer within rule granted, if desired.