WALNUT TOWNSHIP, IN COWLEY COUNTY, *et al.*, V. JAMES JORDAN.

1. TOWNSHIP, *Divided — Organization — De Facto Officers.* Where a portion of a township is declared by a proclamation of the governor to be a city of the second class, the remainder of such township still retains its organization; the members of the township board are still *de facto* officers at least, although they may reside within the limits of the newly-organized city.

2. BOUNDARIES, *Changed — Liability.* A township cannot divest itself of its liability to pay its indebtedness, by altering its boundaries and changing its name.

3. ———— A township warrant is *prima facie* an acknowledgment in writing of a debt of such township.

4. TOWNSHIP WARRANT — *Limitation of Action.* A township warrant is such a promise in writing that an action may be brought thereon against such township at any time within five years from the date of its issue.

*Error from Cowley District Court.*

ACTION by *Jordan* to recover upon certain township warrants. Trial at the April Term, 1886, and judgment for plaintiff. The defendant *Township* brings the case here. The material facts are stated in the opinion.

*Hackney & Asp,* and *Jos. O'Hare,* for plaintiff in error.

*S. D. Pryor,* for defendant in error.

Opinion by HOLT, C.: The defendant in error brought this action against plaintiffs in error, upon several township warrants issued by Winfield township to pay for the erection of a certain bridge. On January 23, 1879, Winfield township made a contract with S. Kavanaugh to construct an abutment to a bridge, at that time within the limits of the township. It then also embraced the city of Winfield, a city of the third class; the governor, by proclamation on the 27th of February of the same year, declared it to be a city of the second class. Before that time the contract of Mr. Kavanaugh had been completed, and the work accepted by the township. Upon the 19th of

March, 1879, the orders of the township were issued to Kavanaugh, and shortly afterward he presented them for payment, and payment was refused because there were no funds in the treasury.  At the time these warrants were issued all of the officers of the township lived within the limits of the city of Winfield.  After the issuing of the warrants that portion of the township which remained after the city of Winfield was incorporated as a city of the second class was divided, a portion being added to Vernon, Fairview and Pleasant Valley townships, and the remainder was formed into the new township of Walnut.  The city of Winfield turned over to the treasurer of Walnut township certain sums of money, amounting in the aggregate to about $1,500, to pay for the erection of the bridge.  On the 19th of March, 1884, plaintiff brought this action upon these warrants, they having been assigned to him.  The action was tried at the April term, 1886, of the Cowley district court, and judgment entered for plaintiff for $1,234.91, of which $812.04 was against Walnut township. The residue of the judgment was against the other townships, apportioned upon the basis of territory and values.

There is no complaint of the apportionment of the judgment; it is simply contended that there should have been no judgment at all against Walnut township.  From the condition of the record, we can consider only the alleged errors that arose from the overruling of the demurrer to the petition. The township of Walnut was bound to meet the liabilities of Winfield township, being virtually the same municipal corporation.  This liability could not be divested by the change of boundary, or change of name; the warrants given by Winfield township were valid obligations against Walnut township, subject possibly to the limitations of difference in territory, and difference in valuation of property.  By the petition it was not necessarily inferred that the township officers of Winfield township were residents of the city of Winfield at the time they issued the warrants, but it seems to have been agreed in the arguments of the parties that they all did live within the territorial limits of the city of Winfield.  We think that is

immaterial in this matter.   The city of Winfield, under its powers as a city of the second class, did not elect its officers until April, 1879, and therefore had not fully completed its organization as a city of the second class, and it was for certain purposes still a portion of Winfield township.   It is the policy of the law that no city or township shall be left without a government and officers empowered to enforce its laws, and meet and discharge its obligations.   By the proclamation declaring Winfield a city of the second class, it was not intended, nor did it have the effect of putting the citizens of that part of the old township of Winfield not embraced in the city of Winfield, outside the pale of government.   Its township board still existed, although all its members did live within the limits of the city of Winfield; they were at least *de facto* officers. (*The State, ex rel., v. Jacobs*, 17 Ohio, 143.)   The theory of the defendant, that the city of Winfield was separated at once from the remaining portion of the township, and that such portion was left without any township government, is not sustained by the authorities cited.   In *Berlin v. Gorham*, 34 N. H. 266, upon which defendant relies, it appears that Gorham was incorporated by the legislature as a town — a municipal corporation somewhat similar to a township in this state — and it was held that the town was liable for the support of a pauper living within the territory at the time of its incorporation, because the act of the legislature incorporating the town was imperative, there being no condition expressed in the law incorporating the town.   The court says:

"By the mere passage of the law the town is completely constituted, entitled to the rights and subject to the duties and burdens of a town, whether the inhabitants are pleased or not."

In *People v. Wren*, 5 Ill. 279, the question decisive of the case was, whether the county of Marquette was an organized county.   By an act of the legislature it was created out of a portion of Adams county, but had failed to elect county officers.   The court held that the act of the legislature created the county at once, and it was not necessary that there should

be any officers elected to fully complete its organization. The court, speaking by Mr. Justice Shields, says:

"The act creating the new county is susceptible of but one construction. The intention of the legislature is expressed in the most positive terms. It declares that a new county is absolutely created, etc."

This decision was only arrived at by a divided court. Mr. Chief Justice Wilson and three of his associates dissented, and very clearly gave his reasons for dissenting. He says:

"But while I admit that the legislature may destroy a county, I am not to be understood as admitting that they can deprive any portion of the territory of the state of a county organization and government. This would be to place a portion of the citizens out of the pale of law and government, and would produce a complete state of anarchy. Such an act of the legislature would, in my opinion, be an abandonment of its highest obligations, and an infringement of the spirit of the constitution, if not its letter. The only manner that occurs to my mind, by which a legislature can destroy a county, is by annexing it to one or more organized counties. No interregnum would then take place; the government of the county to which it was annexed would be extended over and embrace it, simultaneously with its annexation, and thus no evil or inconvenience would occur."

It will be remembered that the township of Winfield still retained its township organization. It was not organized out of the territory of another municipal corporation, as was the town of Gorham and the county of Marquette in the cases cited. It was the city of Winfield taken from the territory of the township of Winfield, which was declared to be a city of the second class, "subject to the provisions of an act to incorporate cities of the second class."

The defendant township claims that the cause of action is barred. The petition is perhaps comprehensive enough to state a cause of action upon the original contract made January 23, 1879, or upon the township warrants issued on the 19th day of March, 1879. This action, it will be remembered, was commenced March 14, 1884. Counsel for the township support this claim by an exceedingly ingenious ar-

gument. They insist that the issuing of the warrant was not an acknowledgment in writing of the defendant township, because it was not signed by it, claiming that it must be signed by the defendant itself, not by an agent, to bring it within the provision of § 24 of the civil code; and they further contend that the issuing of the township warrants to Kavanaugh was no agreement, contract or promise to him to pay the same; that they are simply drafts made by one set of officers upon another, stating that there is but one party to the transaction — the township. This is not the law. The township acknowledged its indebtedness in writing by issuing the warrants. It was just as much the act of the township as the original contract with Kavanaugh. The powers of a township are prescribed by statute; the means and manner of their exercise are confined to its officers. No liability can be incurred except through them; no debt can be paid without the issuing of a warrant. The acts of the township officers when acting within the scope of their powers are the acts of the township itself. It is the only way it can act.

A township warrant itself, aside from any question of acknowledgment in writing, is not barred until five years after it is issued. It is a contract in writing — a promise to pay — and of itself is such an instrument as to constitute a cause of action. (*Comm'rs of Leavenworth Co. v. Keller,* 6 Kas. 510.) This is an agreement in writing with Kavanaugh, executed in the only manner prescribed by law for a township to act. It is not a negotiable instrument, but it can be assigned, and the plaintiff succeeded to all the rights of Kavanaugh as his assignee; and by the petition it is averred it was given as a consideration of a contract fully performed, and it is therefore for the purposes of this action a valid legal instrument in writing.

This disposes of all the questions in the case that we deem material. We recommend that the judgment of the lower court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.